## JOHN REED HOLLY v. THE STATE.

1. CRIMINAL LAW. *Overt act. Previous threats, when incompetent.*
    When a party with a deadly weapon assaults another, who has done no act and made no motion, gesture, or other demonstration indicating any present violent purpose toward the assailant, proof offered by the latter of violence threatened against him by the party assailed will not be admitted. This is true, though the threats extended through several days, and down to the morning of the day in the evening of which the attack was made, and though the party assailed was turbulent and dangerous when drunk, it appearing he was sober at the time in question.

2. SAME. *No exact definition of overt act possible.*
    No exact definition of an overt act can be given. The term embraces anything which evinces a present design to make an assault; acts which seem but trifles when viewed alone, when considered with preceding facts, may become fraught with deadly meaning.

3. SAME. *When court should decide there is no overt act.*
    In a case where all conjecture that there may have been an overt act on the part of the party assailed is negatived by the testimony, and there is no pretense

of any demonstration by him, but that there was none is established by undisputed testimony, it is the duty of the court to exclude evidence of previous threats of violence made by such party towards the assailant. But, in doing so, the court should proceed with caution in deciding that nothing was done by the party assailed which could reasonably have been construed into an overt act; and if the evidence on the subject be conflicting, or the court be in doubt, the proof of threats should be admitted, so that the jury may resolve the doubts in the light of the threats.

4. SAME. *Threats. When proof of inadmissible.*
Where a man is sitting quietly talking to his friends, and is fired on after he has informed his assailant that he is unarmed, proof of his previous threats against the assailant is no more admissible than if the attack had been made when the assaulted party was asleep.

5. SAME. *Evidence. Rejected when immaterial.*
A defendant convicted of an assault and battery cannot complain that the court excluded proof showing that he went to the scene of the difficulty in discharge of his ordinary duties, where, regardless of the reason that carried him there, the proof abundantly supports the verdict.

ERROR to the Circuit Court of Yalobusha County.

Hon. J. W. C. WATSON, Judge.

The case is stated in the opinion of the court.

*Golladay & Freeman*, for the plaintiff in error.

1. A calm consideration of the testimony offered by the defense, and excluded, will, it is confidently believed, satisfy any one that Holly was fully justified in self-defense to do what he did. May one ever anticipate his enemy, and kill him? Yes, if necessary to protect himself under the circumstances. *Long* v. *The State*, 52 Miss. 26–38.

2. The court should have allowed the jury to consider the threats made by Fahy against the defendant, and communicated to him, in order that they might judge whether the defendant had reasonable ground to anticipate great bodily harm at the hands of Fahy, and its immediate accomplishment. *Pridger* v. *The State*, 31 Texas, 420. "What is reasonable ground to apprehend such design must always be as much, or indeed more, a question of fact for the jury than a question of law for the court." *Cotton* v. *The State*, 2 Geo. 511; Hor. & T. on Self-Defense, 476.

3. The court excluded the testimony in question on the

ground that there' was no overt act on the part of Fahy. In this the court erred, for the judge usurped the peculiar province of the jury. What is an overt act, should be determined, from the circumstances of each case, by the jury. *Cotton* v. *The State*, 2 Geo. 511; *Patton* v. *The State*, 18 Mich. 826; 1 Jones, 190; *Wesley* v. *The State*, 8 Geo. 327; *Keener* v. *The State*, 18 Ga. 234. But we are not aware that the well-established principle that communicated threats are admissible without an overt act has ever been changed in this state so as to exclude them. It is not so decided in *Dyson* v. *The State*, 4 Cushm. 362; *Wesley* v. *The State*, 8 Geo. 327; *Evans* v. *The State*, 44 Miss. 762; *Head* v. *The State*, 44 Miss. 731; *Newcomb* v. *The State*, 8 Geo. 383.

*Harris & George*, on the same side.

That there must be some demonstration to inflict threatened violence, in order to render previous threats admissible as a ground of justification for homicide, we concede. We concede, moreover, that a man has no right to sacrifice the life of another to his timidity; but, within these limits, the threatened party must be left to decide upon the danger and the means of averting it.

The effect of proof of threats and of violent and dangerous character is to show the state of mind under which the defendant acted, as also to interpret the demonstration.

The rule of law on the subject necessarily supposes that the "overt act" or demonstration need not be such as to impress any ordinary observer with the belief that violence was intended; for, if the act was of that character, previous threats would not be needed to justify or excuse an assault. It proceeds on the idea that the act, under ordinary circumstances, and by an ordinary man, may be equivocal—something less than those acts which unequivocally show a purpose to inflict death or great bodily harm.

Previous threats are important as evidence, because they interpret the demonstration, or the purpose of it, to the party at whom it is directed, and interpret it in a way in which it

might not appear to a person unconscious of the avowed hostility and deadly spirit which prompts it.

The court should have admitted the evidence offered as going to prove justification by the law of self defense.

*T. C. Catchings*, Attorney-General, for the State.

It is not in every case that threats made by the person shot or slain, although they may have been communicated to the defendant, are admissible in evidence. If such threats are offered to prove that the defendant had a right to kill or shoot his antagonist, there being no proof of a hostile demonstration by him, then they are irrelevant. Whart. on Hom.. 694. If the threats have not been communicated, they are only admissible where there is a reasonable doubt as to how the difficulty commenced ; as, for instance, where nobody saw it, or when the witnesses give confused and contradictory accounts of it. *Johnson's Case*, 54 Miss. 430. If the threats have been communicated, they are irrelevant, unless, at the time of the encounter or shooting, there was some overt, actual demonstration, by conduct and acts, of a design to take life or to do some great personal injury, which would make the killing or shooting apparently necessary to self-preservation ; or unless the question is as to which party in the encounter is the assailant. *Evans* v. *The State*, 44 Miss. 772 ; *Harris* v. *The State*, 47 Miss. 320. Threats, whether communicated or not, unless supported by proof of such additional facts above indicated, however deliberately made, do not justify even an assault and battery.

CHALMERS, J., delivered the opinion of the court.

John Reed Holly was convicted of an assault and battery, in shooting and slightly wounding one Fahy, and sentenced to fine and imprisonment in the county jail. At the time of the shooting, Fahy was sitting on an empty box in front of a store-house, conversing with some friends. Holly approached him and demanded to know whether " he intended to pursue that difficulty further." Fahy asked, " What difficulty ? " to

which Holly responded, " You know very well what diffi-
culty." Fahy answered, " I desire no difficulty with you,
Johnny, and I am not armed." The last remark was caused
by seeing each of the defendant's hands resting on a pistol in
either pocket of his pantaloons. The defendant immediately
drew one of the pistols and attempted to fire, but it failed
to explode. Fahy seized and raised a chair. The defendant,
drawing his other pistol, fired in quick succession three shots,
only one of which took effect.

The errors complained of are : the exclusion of testimony,
and the refusal to grant certain instructions asked. If the
testimony was properly excluded, the instructions were prop-
erly refused, because there was no testimony before the jury
to which they were applicable. The excluded testimony con-
sisted of proof of antecedent difficulties, in which Fahy was
said to have been the aggressor, and of threats uttered by him
extending through several days, and coming down to the morn-
ing of the day in the evening of which the shooting took place ;
and also of testimony that Fahy was a turbulent and danger-
ous man when drunk, as he had been at the time of the pre-
vious difficulties and threats, but as he was shown not to have
been at the time of the shooting. Further testimony was
offered, and excluded, tending to show that the defendant had
not gone to the scene of conflict for the purpose of seeking
Fahy, but in the discharge of his ordinary duties. Was all, or
any portion, of this testimony improperly excluded?

We have earnestly scanned the record to see whether there
was any act, motion, or gesture upon the part of Fahy which
can be considered as falling within the meaning of the term
" overt act," or which could have afforded the defendant a " rea-
sonable ground to apprehend a design to do him some great
personal injury," and to believe that " there was imminent
danger of such design being accomplished." Not only is none
such shown, but all conjecture that there may have been such
is negatived by the testimony. Counsel for the defendant, in
their brief, make the following concession : " That there

must be some demonstration to inflict threatened violence, in order to render previous threats admissible as a ground or justification for homicide, we concede. We concede, moreover, that a man has no right to sacrifice the life of another to his own timidity."

. As we read the record, this concession, which unquestionably embodies the law correctly, disposes of all objection to the exclusion of the testimony relating to previous threats and difficulties. There was here no demonstration, nor any pretense of one. It is not a case of conflict of evidence as to the existence or non-existence of a demonstration upon the part of the person assailed, nor a case where there is a simple failure to show a demonstration. The non-existence of any act which could be construed as a demonstration towards violence by Fahy is established by the testimony of three witnesses, and its existence is alleged by no one, though the chosen friend of the defendant, who accompanied him to the scene, was a witness. It must follow that the shooting was done through hatred aroused, or timidity engendered, by the previous threats and difficulties. The one feeling would afford no justification, and the other would demonstrate the highest grade of crime.

It is no less true in criminal than in civil cases that testimony which does not tend to establish or to defeat the issue is inadmissible. If the previous threats and difficulties, though admitted, would constitute no defense, by reason of the circumstances attending the conflict, they could only serve to confuse, rather than to aid, the jury. When the representative of the state objects to the introduction of such testimony, he practically demurs to its legal effect. When the court excludes it, it virtually declares that, conceding its truth, no defense is shown. To say that it should be admitted, though it constitutes no defense, is violative of the clearest principles of the law of evidence.

It is earnestly insisted that this view of the law results in a usurpation by the court of the province of the jury, in under-

taking to determine from the previous evidence whether there has been shown an overt act upon the part of the person assaulted. The judge is only discharging the duty always imposed upon him where the admissibility of certain evidence is by law made dependent upon the precedent production of certain other evidence. The sufficiency of evidence is a question for the jury. Whether there is any evidence upon a given point is always a question for the court. 1 Greenl. on Ev., sec. 49. The rule is no less applicable to criminal than to civil cases. Thus, where two persons are jointly indicted, the court must always decide whether there has been any evidence adduced tending to establish concert of action or conspiracy, so as to make the acts and declarations of one receivable in evidence against the other. So, also, the court always decides whether it has been proved that the person whose statements are offered as dying declarations had, in fact, abandoned all hope of life. *Ib.*, sec. 160. So, also, whether confessions were voluntarily made, or were extorted by improper influences. *Ib.*, sec. 365. So, too, the court always decides whether a witness is of sufficient intelligence, or sufficiently aware of the future punishment to be expected from perjury, to authorize his testimony to be received.

It may, in short, be stated as a universal rule that the court always decides whether there has been any evidence upon a particular point, when there exists a legal necessity to produce such evidence, in order to warrant the introduction of evidence upon some other point. To this extent the court decides questions of fact — that is to say, it determines whether there has been any evidence showing the primary fact, upon the existence of which the admissibility of evidence relative to the secondary fact depends.

In criminal cases the judge should give the prisoner the benefit of all doubts. He should remember that no exact definition of an overt act can be given, and that the term embraces anything which evinces a present design to make an assault. Acts which seem trifles light as air when viewed

alone, may become fraught with deadly meaning when all preceding facts are disclosed.  Hence the necessity of caution upon the part of the judge in deciding that nothing was done at the time, by the party assailed, which could reasonably have been construed into an overt act.  But the delicacy of the duty will neither prevent nor excuse him from discharging it.

If, failing to observe proper caution in this regard, he improperly excludes testimony, the remedy must be sought in this court, to which the accused always has access, and to which the state never has.  If, upon an inspection of the record, we could discover any conduct upon the part of the person assailed or killed which, viewed in the light of the proffered proof of antecedent threats, could reasonably have been considered by the accused as indicating a present purpose to carry out the threats, we should feel it our duty to reverse.  If the record left it doubtful, or the evidence was conflicting, the same result would follow, because the jury should be allowed to resolve the doubt in the light of the threats.

If the rule ought to be made broader than this—if justice and fair-dealing demand that, in prosecutions for mutual combats, or homicides, the jury should be allowed, regardless of the immediate circumstances attending the conflict, to hear the full history of preceding threats and difficulties, with a view of placing themselves in the exact attitude of the parties—this change in the law must be made by that department of the government which alone can make and unmake laws.  Looking to the facts of the case before us, we think the testimony was correctly excluded, and the charges properly refused.  If it be difficult to give a definition of the term " overt act " which will embrace all that the words imply, it is not difficult to say that there was no such act in this case.

A construction of the law which would admit proof of previous threats, where a man who is sitting quietly talking to his friends is fired upon three times after he has informed his assailant that he is unarmed, would make them equally admissible when he was shot while wrapped in sleep.

We fail to see, in view of the verdict, how the defendant was injured by the exclusion of proof that he went to the scene of the shooting in the discharge of his ordinary duties. The state had not attempted to show that he went there for the purpose of bringing on the conflict, and he, therefore, was not called upon to explain his presence. The state, admitting that he was lawfully there, held him responsible for his acts after his arrival. Those acts abundantly support the verdict, regardless of the reasons that carried him to the spot.

Judgment affirmed.