CHICAGO, ST. LOUIS AND NEW ORLEANS RAILROAD CO.
*v.* JOHN W. SCURR.

1. RAILROADS.  *Injury to passengers.  Exemplary damages.*

In the absence of recklessness, wilfulness and insult, a railroad company is not liable to a passenger for exemplary damages, and if the conductor, confused by unusual occurrences, passes a station and, courteously explaining to a passenger for this place, gives him a free return ticket, the company is only liable for compensatory damages.

2. SAME. . *Degree of responsibility.  Effect on damages.*

Common carriers are subjected by law to a degree of responsibility unknown to other callings, but the measure of damages for non-performance of their duties is the same as in other pursuits, to wit: compensation for carelessness or thoughtlessness, and exemplary punishment for recklessness, wilfulness, or insult.

3. SAME.  *Exemplary damages.  Distinction.*

The *dicta* that any negligence of a railroad company operating by steam is "gross" (*New Orleans Railroad Co.* v. *Bailey,* 40 Miss. 395), and that punitive damages may be inflicted on a common carrier for mere omission of duty (*Memphis Railroad Co.* v. *Green,* 52 Miss. 779), are incorrect, because they fail to preserve the distinction between carelessness or thoughtlessness and intentional or reckless injury.

4. SAME.  *Exemplary damages.  Provinces of the court and the jury.*

Whether the evidence tends to show any facts to warrant exemplary damages is a question for the court to determine by its instructions, but the sufficiency of the evidence to establish such facts is a matter for the consideration of the jury.

5. SAME.  *Duty of court.  Instructions.*

If the proof, fails to warrant an imputation of wilfulness, recklessness or rudeness, the court should, when so requested, instruct the jury not to inflict punitive damages; otherwise, if there is conflict of evidence as to any fact which, if proved, justifies their imposition.

APPEAL from the Circuit Court of Yalobusha County.

Hon. J. W. C. WATSON, Judge.

At the trial, the court charged the jury for the appellee, over the appellant's objection, upon the evidence detailed in the opinion, thus: 2. A railroad company is liable for damages if it fails to stop the train at the station of a passenger's destination and carries him beyond without his consent; and, in such case, if in the judgment of the jury the evidence shows

a personal wrong and injury of a character to call for the imposition of exemplary damages, the jury are authorized, in assessing the damages, to allow not only just compensation for the injury, but to inflict proper punishment on the defendant for its disregard of public duty, and in doing so may take into consideration the pecuniary means of the defendant. 5. The law has not intrusted the court with a discretion to estimate damages, but has devolved the power on a jury, as a matter of sentiment and feeling, to be exercised by them according to their sound discretion, duly weighing all the circumstances of the case as shown by the evidence, and considering the state, degree, quality, trade or profession of the party injured, and of the party doing the injury.

The court gave this instruction for the appellant: 1. Exemplary damages by way of punishment are only allowable in cases in which the proof shows some element of fraud, malice, reckless negligence or oppression, insult, rudeness or wilful wrong, or other cause of aggravation in the injury or wrong alleged; and, if the jury believe from the evidence that in this case there is no such element, they should award no damages beyond the actual suffering, injury or damage, if any is shown by the proof.

The appellant asked the following charge, which the court refused: 2. If the plaintiff sustained no damage beyond the fact that he was not put off at Torrance, then he is not entitled to recover anything beyond what the jury may believe was the injury sustained by reason of the failure of the defendant to stop and permit him to get off at Torrance, and in determining such injury the jury may look to the absence of all proof of the necessity the plaintiff was under to stop at Torrance, the absence of all proof that he had pressing business engagements at Torrance which he failed to meet by reason of the defendant's neglect to stop and permit him to get off at Torrance, together with all the evidence before them.

*W. P. & J. B. Harris*, for the appellant.

1. The court must decide whether the case is one for the infliction of punishment, and, if it has not the necessary features should so inform the jury. To leave this question to the jury is a grave error. 2 Thompson on Negligence, 1264.

After submitting to the jury a question of law to decide, the court gave them an erroneous standard by which tó be governed. The true rule is that the wrong must be wilful, or accompanied by circumstances of aggravation, as insult or oppression, and, we may safely add, mental and bodily suffering. The cases of *Heirn* v. *McCaughan*, 32 Miss. 17 ; *New Orleans Railroad Co.* v. *Hurst*, 36 Miss. 660, and *Southern Railroad Co.* v. *Kendrick*, 40 Miss. 374, afford no warrant for these instructions. In the case of *Mobile Railroad Co.* v. *McArthur*, 43 Miss. 180, there were circumstances of extreme aggravation, and in the case of *New Orleans Railroad Co.* v. *Statham*, 42 Miss. 607, the plaintiff, while ill, was put off and exposed to the weather. No decision in this State conflicts with the principle that omission of duty does not of itself justify punitive damages. Such is the law. *Milwaukee Railway Co.* v. *Arms*, 91 U. S. 489. Unquestionably where the jury are instructed to punish, as well as repair the wrong, there must be solid ground. 1 Thompson on Negligence, 573. Punishment is inflicted for offence, not error. To justify punishment in damages, the act complained of must have something of a wanton or criminal nature. *Kennedy* v. *North Missouri Railroad Co.*, 36 Mo. 351 ; *Heil* v. *Glanding*, 42 Penn. St. 493 ; *Chicago Railroad Co.* v. *McKean*, 40 Ill. 218 ; *Illinois Railroad Co.* v. *Welch*, 52 Ill. 183.

2. It is questionable whether such instructions would be proper in any case. Here they were grossly erroneous. There is a class of cases where there is no pecuniary standard of reparative damages, such as libel, *crim. con.*, cases of personal indignity, oppression, and degrading outrages generally, in which the jury are allowed to govern themselves by the sentiment or feeling which legitimately springs from the character of the wrong. In that class of cases it would not be error, perhaps, to say to the jury they must take the promptings of sentiment and feeling, but in a case like this the instruction is a caricature. What was there in the ridiculous detail of these facts which appealed to the emotions ? How would a jury interpret such an instruction ? They have a strong sentiment and feeling against these corporations. That they understood the court as giving license to indulge these, is proved beyond

any doubt by a verdict which returned its own lessons upon it with a shock. Sentiment and feeling meant to the jury their hostility to railroad corporations.

*W. P. Harris* also made an oral argument.

*Fitz Gerald & Whitfield,* for the appellee.

1. What elements must exist in order that the injury shall warrant exemplary damages is a question of law, but if the instructions define these elements the jury determine their existence. Thompson on Carriers of Passengers, 576. If there is any evidence tending to show such elements, its effect must be left to the jury. *Southern Railroad Co.* v. *Kendrick,* 40 Miss. 374. Fraud, malice, recklessness, or oppression need not exist, but a failure in duty by a railroad company's agents constitutes ground for such damages. *Bell* v. *Morrison,* 27 Miss. 68; *Vicksburg Railroad Co.* v. *Patton,* 31 Miss. 156; *Heirn* v. *McCaughan,* 32 Miss. 17; *New Orleans Railroad Co.* v. *Hurst,* 36 Miss. 660; *Memphis Railroad Co.* v. *Whitfield,* 44 Miss. 466; *Memphis Railroad Co.* v. *Green,* 52 Miss. 779. In this case, however, the jury were charged that those elements were necessary. By their verdict they have determined the existence of those facts, and that finding is conclusive. Abundant evidence of exposure and suffering is in the record. *New Orleans Railroad Co.* v. *Statham,* 42 Miss. 607.

2. The amount of damages in cases like this, from their exemplary character, must be left largely in the discretion of the jury. 2 Thompson on Negligence, 1269; *New Orleans Railroad Co.* v. *Hurst, ubi supra.* Even if it were clear that the damages were excessive it is not the province of this court to interfere. *Maher* v. *Central Park Railroad Co.,* 67 N. Y. 52; Thompson on Carriers of Passengers, 577. Verdicts will not be set aside as awarding excessive exemplary damages, unless they are so outrageous as to evince, by their enormity, the existence of prejudice, partiality or corruption. *Coleman* v. *Southwick,* 9 John. 45. Pecuniary punishment is harsh or lenient according to the means of the offender. The amount is the jury's judgment, not the court's. This is not a case in which the verdict can be vacated as excessive. There is evidence to sustain it, the jury were not misled, and the amount is not so large as to evince improper motives.

CHALMERS, C. J., delivered the opinion of the court.

The plaintiff (appellee) took passage at night on the defendant's (appellant's) train from Grenada to Torrance, holding a ticket for the latter place. Shortly before the train arrived at Torrance the conductor became involved in an altercation with some emigrants, who by mistake had gotten upon the wrong train, and also with a passenger who, without authority, had pulled the bell-rope and thereby stopped the cars. Thrown off his balance by these occurrences, the conductor carelessly and negligently permitted the train to run by Torrance, without stopping, and was several miles beyond the depot before he recollected that there were several passengers on board for that point. He took up the plaintiff's ticket before reaching the next station (Coffeeville), made to him a statement of the troubles with the emigrants and with the person who had rung the bell, as an explanation and excuse for his own negligence in failing to stop at his place of destination, and promised to make arrangements for his speedy return from Coffeeville without charge. Reaching Coffeeville (eight miles north of Torrance) he repeated his explanation and delivered to the plaintiff an order addressed to the conductor of a freight train which would pass south in a few hours, directing that the plaintiff should be carried back to Torrance free of charge. The plaintiff took the order, but did not avail himself of it, preferring to remain in Coffeeville until a passenger train should go south in the afternoon. It is admitted that the conductor, throughout the matter, was courteous, respectful and polite. The plaintiff arrived at Coffeeville about two hours before day. The night was cold, dark, and rainy. He did not remain in the depot building, in which there was a fire, but sought and obtained elsewhere a room without a fire. Whether the room obtained was furnished with a bed, and, if so, whether the plaintiff retired to bed does not appear. If he had taken the freight train, upon the conductor of which he held the order for free transportation, he would have reached Torrance about nine o'clock in the morning. As it was, he arrived there some time in the afternoon. There is no proof as to the value of his time, nor of any pecuniary loss of any sort, nor does it appear whether he was engaged in any business. There is no claim of mental or

bodily suffering, except that the plaintiff states that while at Coffeeville " he suffered some from cold." The jury rendered a verdict against the railroad company for $2,500. Two thirds of this the plaintiff was forced by the court below to remit, and judgment was entered for $833.33. From this judgment the defendant, the motion for a new trial having been overruled, prosecutes this appeal.

The damages awarded by the jury were not only vindictive and punitory in their character, but so wholly disproportioned to the wrong done and the injury sustained, as at once to shock reason, conscience and common sense. To have permitted the verdict to stand would have been an invitation to every man in the country to embark in the business of riding on railroads, in the hope of making a fortune by suing for damages claimed to arise out of some harmless carelessness of a conductor. As modified by the court, the verdict is less shocking, and perhaps would not be set aside as excessive, if the case had been one justifying the imposition of exemplary damages. That it still remains exemplary and punitive in its character is conceded, since the actual damage apparent from the proof is trifling. Did the proof warrant the rendering of exemplary damages?

By a long train of decisions in this State, which simply announce the rule everywhere recognized, such damages are permissible only where there has been some element of intentional wrong, or, in the absence of intention, a negligence so gross as to evince a reckless disregard of consequences. The idea is variously expressed by different text writers and judges and sometimes with a multitude of words, but if to the words " negligence " and " intention" we add the word " insult," we will perhaps sufficiently embrace all the states of case in which such damages should be awarded by a jury or sanctioned by a court. Where the negligence of which a defendant has been guilty bears no aspect of recklessness or wilfulness, and is wholly free from any element of insult or rudeness, there is no justification for the imposition of any damages beyond such as will fully compensate for all injuries actually sustained. Full compensation for all actual damage may, in the case of severe injuries, or the disappointment of important engagements, em-

brace amounts as large as if given by way of punishment; but if the injuries have sprung from that sort of negligence, carelessness or forgetfulness to which mankind generally are prone, the essential idea of punishment must be discarded. In the case at bar the defendant's conductor was clearly remiss in duty, but it is quite as apparent that he was neither wilfully, recklessly nor rudely so. His negligence was inexcusable as to one who demanded compensation for all losses thereby sustained, but it affords no ground whatever for the imposition upon his superior of that kind of punishment which would stamp his act as criminal. It sprang from that temporary thoughtlessness and inattention of which we are all more or less guilty in the discharge of our daily duties. For it we must respond in full compensation to those who have a right to demand fidelity and care at our hands, but to punish us beyond this would be to inflict a wrong more grievous than that of which we have ourselves been guilty.

By the second instruction given for the plaintiff the court authorized the jury to inflict exemplary damages upon the defendant if in their judgment the wrong and injury was of such character as to call for their imposition; and by the plaintiff's fifth instruction the jury were told that the law devolved upon them the power of estimating the damages as a matter of sentiment and feeling, to be exercised by them according to their sound discretion. No criterion was by these instructions afforded the jury for determining whether the case called for the imposition of such damages, but by the first instruction given for the defendant the proper rule on this subject was announced. An instruction, however, asked by the defendant, substantially declaring that nothing beyond actual damage should be awarded, was refused by the court. The action of the court on these instructions was erroneous. The case was plainly one in which exemplary damages were not allowable, and the court should have so informed the jury. Such a direction ought not to be given in a case that admits of doubt, or where there is a conflict of evidence as to any fact, the existence of which, if proved, would warrant their imposition. But such was not the case here. Although the facts were not agreed on, there was no disagreement as to any fact at all material to

any issue involved; nor was there anything in the testimony, either of the plaintiff, or of the conductor, showing or tending to show fraud, malice, oppression or recklessness on the part of the defendant's employees. Whether evidence is sufficient to establish a particular fact is a question for the jury; whether there is any evidence in support of it is always a matter for the determination of the court; and this doctrine is applied against defendants even in criminal prosecutions for life or liberty. *Holly* v. *State*, 55 Miss. 424.

In announcing the rule in this State as to the measure of damages in actions for the detention of personal property, it was said by this court, in *Whitfield* v. *Whitfield*, 40 Miss. 352, 366, that where there was no fraud, malice or oppression in the taking or detention of the property, its value at the time of the taking, must be the standard, "and this (say the court) is a rule of law to be decided by the court." In the *Southern Railroad Co.* v. *Kendrick*, 40 Miss. 374, 390, it is said that "a neglect of duty, clearly not attended with any circumstances of insult, of aggravation of feelings, of injury to the person or his property, or of bodily or mental suffering, would not justify vindictive damages; yet if there be any evidence tending to show such circumstances, its weight and force rest peculiarly in the discretion of the jury." We are prepared to go a step further and say that in any and all actions for damages where the proof fails to show anything that will warrant an imputation of wilfulness, recklessness, or rudeness, it is the duty of the court to inform the jury, when requested so to do, that they cannot inflict punitory damages. Not to do so, in a case free from doubt, would be an abdication of judicial authority, and a permission to the jury to violate the settled principles of law. In 2 Thompson on Negligence, 1264, it is said that "whether or not the case is one which justifies exemplary damages is a question for the court to determine in its instructions to the jury," and the following, among other cases, bear out the author's statement. *Chicago* v. *Martin*, 49 Ill. 241; *Heil* v. *Glanding*, 42 Penn. St. 493; *Kennedy* v. *North Missouri Railroad Co.*, 36 Mo. 351; *Illinois Central Railroad Co.* v. *Welch*, 52 Ill. 183. The point was met and decided by the Supreme Court of the United States in *Milwaukee Railroad Co.* v. *Arms*,

91 U. S. 489, in which the lower court had charged the jury that " if you find that the accident was caused by the gross negligence of the defendant's servants controlling the train, you may give to the plaintiffs punitive or exemplary damages." The Supreme Court, after examining the facts, came to the conclusion that there was no proof of gross negligence in the case, and reversed the judgment because of the giving of this instruction. See, also, the note appended to this case, giving the ruling of Mr. Justice Davis on this subject on the circuit.

In the case of *New Orleans Railroad Co.* v. *Bailey*, 40 Miss. 395, an instruction was approved which declared that any negligence by a railroad company, operating by the dangerous and powerful agency of steam, well deserves the epithet of gross. This ruling, though based on and borrowed from the language of Justice Grier, in *Philadelphia Railroad Co.* v. *Derby*, 14 How. (U. S.), 468, 486, is manifestly unsound. Gross negligence is synonymous with recklessness, and has frequently been said to be undistinguishable from fraud. If the announcement, therefore, was sound law, every act of negligence on the part of a railroad, no matter how slight, would justify the imposition of exemplary damages; and thus we destroy at once that distinction between carelessness and wilfulness which this court has recognized in numberless suits against railroad companies. Judge Tarbell said, in the case of *Memphis Railroad Co.* v. *Green*, 52 Miss. 783, that, as against a common carrier, punitive damages might be inflicted for a mere omission of duty " by way of punishment for the neglect of a duty to travellers," citing 2 Redfield on Railways, § 182. This is an entire misconception of Judge Redfield's text. He was discussing the duty of a common carrier to transport all well-conducted travellers, whether the party suing had a special contract for transportation or not, a duty imposed by reason of his functions as a common carrier; a doctrine, by the way, which found a somewhat striking illustration in this State, in the case of *Heirn* v. *M'Caughan*, 32 Miss. 17. This doctrine has nothing to do with the measure of damages to be inflicted upon the carrier for his derelictions of duty. It only fixes what that duty is towards the travelling public.

For any dereliction of duty he is to be dealt with, as to the measure of damages, like other men. The powers of common carriers over the persons and property committed to their custody is very great; and hence the law imposes upon them the severest exactions, and a degree of responsibility unknown to other callings of life. But though these exactions are more numerous and stringent, a non-performance of them brings to the delinquent just that which a default of duty brings to all men, that is to say, full compensation for thoughtlessness and carelessness, exemplary punishment for recklessness, wilfulness or insult.

For error in giving the plaintiff's second and fifth instructions, and in refusing the defendant's second, the judgment is reversed and a new trial awarded.

*Judgment accordingly.*