S. O. FRANCIS *vs.* WESTERN UNION TELEGRAPH CO.

Argued May 16, 1894. Reversed July 17, 1894.

No. 8807.

**Unreasonable conditions in a contract to transmit a message.**

A message delivered to the defendant for transmission was written on one of its blanks, upon which were printed the following conditions: (1) That the company would not be liable for mistakes or delays in the transmission or delivery or for nondelivery of the message beyond the sum paid for sending the same, unless the message was ordered repeated; (2) that the company would not be liable for damages in any case where the claim was not presented within sixty days after the message was filed with the company for transmission. The company neglected to transmit the message at all, and the addressee brought an action. *Held*, that these conditions were unreasonable and inapplicable.

**Damages for mental suffering can not be recovered.**

In an action against a telegraph company for failing to transmit and deliver a message, damages for mental suffering cannot be recovered.

**Laws 1885, ch. 208, considered.**

The common-law rule in this respect is not changed by Laws 1885, ch. 208, entitled "An act to regulate the business of operating telegraph lines," etc.

Appeal by defendant, the Western Union Telegraph Company, from an order of the District Court of Ramsey County, *John W. Willis*, J., made November 29, 1893, denying its motion for a new trial after verdict for plaintiff, O. S. Francis, for $760.

*George H. Fearsons* and *Ferguson & Kneeland,* for appellant.

The condition requiring the presentation of claim for damages within sixty days after filing the message for transmission is not unreasonable or void. *Cole* v. *Western Union Tel. Co.,* 33 Minn. 227; *Lewis* v. *Great Western R. Co.,* 5 H. & N. 867; *Southern Exp. Co.* v. *Caldwell,* 21 Wall. 264; *United States Exp. Co.* v. *Harris,* 51 Ind. 127.

Where the sender has made use of a message blank, the conditions incorporated therein are brought home to him and deemed to have received his assent. *Heimann* v. *Western Union Tel. Co.,* 57 Wis. 562; *Kiley* v. *Western Union Tel. Co.,* 109 N. Y. 231; *Wolf* v. *Western Union Tel. Co.,* 62 Pa. St. 83; *Grinnell* v. *Western Union Tel. Co.,* 113 Mass. 299; *Beasley* v. *Western Union Tel. Co.,* 39 Fed. Rep. 181.

Where the court upon the trial presents to the jury instructions upon a material issue which are inconsistent, contradictory and liable to mislead, the verdict cannot stand. *McCormick* v. *Kelly,* 28 Minn. 135; *McKelvey* v. *Chesapeake & O. Ry. Co.,* 35 W. Va. 500; *Thompson* v. *Western Union Tel. Co.,* 106 N. C. 549; *St. Louis, I. M. & S. Ry. Co.* v. *Needham,* 52 Fed. Rep. 371.

Mental anguish alone claimed to have been suffered from the negligent failure by a telegraph company to perform a contract to deliver a message, there being no suggestion of malice, fraud or deception, is not a basis for recoverable damages. *Lynch* v. *Knight,* 9 H. L. Cas. 577; *Hamlin* v. *Great Northern Ry. Co.,* 1 H. & N. 408; *Hobbs* v. *London & S. W. Ry. Co.,* L. R. 10 Q. B. 111; *Walsh* v. *Chicago, M. & St. P. Ry. Co.,* 42 Wis. 23; *Canning* v. *Williamstown,* 1 Cush. 451; *Meidel* v. *Anthis,* 71 Ill. 241; *Oldfield* v. *New York & H. R. R. Co.,* 14 N. Y. 310; *Tilley* v. *Hudson River R. Co.,* 29 N. Y. 252; *Dorrah* v. *Illinois Cent. R. Co.,* 65 Miss. 14; *Wyman* v. *Leavitt,* 71 Me. 227; *Bovee* v. *Danville,* 53 Vt. 183; *Paine* v. *Chicago, &c., R. Co.,* 45 Ia. 569; *Joch* v. *Dankwardt,* 85 Ill. 331; *Covington St. R. Co.* v. *Packer,* 9 Bush 455; *Clinton* v. *Laning,* 61 Mich. 355; *Trigg* v. *St. Louis, &c., Ry. Co.,* 74 Mo. 147; *Kennon* v. *Gilmer,* 131 U. S. 22; *Wilcox* v. *Richmond & D. Ry. Co.,* 52 Fed. Rep. 264.

In accordance with these authorities, this court has held that men-

tal anguish, like physical pain, to be taken into consideration in such cases, is confined to such as is endured by the plaintiff in consequence of a personal injury to himself. *Keyes* v. *Minneapolis & St. L. Ry. Co.*, 36 Minn. 290.

The first innovation (and one which has never been approved outside of this country) was made in Texas in 1881 in the case of *So Relle* v. *Western Union Tel. Co.*, 55 Tex. 308. Since that decision the Texas court has made peculiar fluctuations. See *Gulf, &c., Ry. Co.* v. *Levy*, 59 Tex. 542; *Western Union Tel. Co.* v. *Cooper*, 71 Tex. 507; *Western Union Tel. Co.* v. *Brown*, 71 Tex. 723; *Western Union Tel. Co.* v. *Simpson*, 73 Tex. 422; *Rowell* v. *Western Union Tel. Co.*, 75 Tex. 26; *Western Union Tel. Co.* v. *Adams*, 75 Tex. 531; *Western Union Tel. Co.* v. *Kirkpatrick*, 76 Tex. 217; *Western Union Tel. Co.* v. *Rosentreter*, 80 Tex. 406; *Hale* v. *Bonner*, 82 Tex. 33.

The doctrine of these cases has gained recognition in Indiana, Kentucky and North Carolina. It has also been recognized in a qualified sense in Alabama, and, largely under the influence of a local statute, in Tennessee, with a vigorous dissent. The cases are not agreed, however, as to the nature of the action, nor as to the precise ground upon which the recovery rests. In Kentucky, Alabama and Tennessee the action was treated, as it has been uniformly in Texas, as resting upon the breach of a contract. In Indiana and North Carolina the action has been regarded as resting partly in tort.

On the other hand, the correctness of these cases has been denied and the fallacies of their reasoning carefully pointed out. *Western Union Tel. Co.* v. *Rogers*, 68 Miss. 748; *Chapman* v. *Western Union Tel. Co.*, 88 Ga. 763; *West* v. *Western Union Tel. Co.*, 39 Kan. 93; *Newman* v. *Western Union Tel. Co.*, 54 Mo. App. 434; *Summerfield* v. *Western Union Tel. Co.*, 87 Wis. 1; *Chase* v. *Western Union Tel. Co.*, 44 Fed. Rep. 554; *Crawson* v. *Western Union Tel. Co.*, 47 Fed. Rep. 544; *Tyler* v. *Western Union Tel. Co.*, 54 Fed. Rep. 634; *Kester* v. *Western Union Tel. Co.*, 55 Fed. Rep. 603; *Gahan* v. *Western Union Tel. Co.*, 59 Fed. Rep. 433.

Which of these conflicting views shall be adopted as the law of this state? This is the first appearance in this court of such an action against a telegraph company. This court is free to choose. Shall it abide by the long established principles of the common law, or de-

clare for the innovation announced by the Texas court, and which has made that court in its efforts to stem the tide of "intolerable litigation" which followed in its wake a spectacle both pathetic and ridiculous.

*Henry & R. L. Johns,* for respondent.

The condition in the contract printed on the back of the message sent by plaintiff's wife differs materially from the condition held to be reasonable in the case of *Cole* v. *Western Union Tel. Co.,* 33 Minn. 227. There the condition was, "within sixty days after sending the message." The condition on the new form is that a claim for damages must be presented "within sixty days after the message is filed with the company for transmission." The change was made because of certain decisions which held that the condition in the old form, requiring a claim for damages to be presented within a specified time "after sending the message," did not apply where the claim was founded upon a failure to send the message at all. *Western Union Tel. Co.* v. *Way,* 83 Ala. 542; *Western Union Tel. Co.* v. *Yopst,* 118 Ind. 248.

This limitation is unreasonable, and especially so as to the claim of the person to whom the message is sent. It is void under the statute of this state, which provides that a telegraph company "shall be liable for want of ordinary care, any contract, notice or condition to the contrary notwithstanding, and any notice, condition or contract stipulating for exemption from the consequences of the lack of ordinary care shall be void." Laws 1885, ch. 208; *Southern Exp. Co.* v. *Caperton,* 44 Ala. 101; *Adams Exp. Co.* v. *Reagan,* 29 Ind. 21.

The rule and the reasons assigned for it are not applicable to the present case, in which the person to whom the message is addressed makes claim for damages. *Western Union Tel. Co.* v. *McKibben,* 114 Ind. 511; *Johnston* v. *Western Union Tel. Co.,* 33 Fed. Rep. 362.

A knowledge of the condition must be brought home to the sender of the message by evidence *aliunde.* The fact that the message was written on a blank upon which the condition is printed does not raise a presumption of law or fact that the sender had knowledge of it. *Tyler, U. & Co.* v. *Western Union Tel. Co.,* 60 Ill. 421; *Blossom* v. *Dodd,* 43 N. Y. 264.

Such a limitation must be supported by a consideration of its own. As a common carrier is bound to carry under his common law liability for a reasonable price, and as he cannot limit his common law liability except by special contract assented to, it would seem to follow that a special contract with limited liability without any reduction in price is a *nudum pactum.* There is an important difference between conditions printed on the face of the message and those printed on the back. *Wilson* v. *Chesapeake, &c., R. Co.,* 21 Gratt. 654; *Brown* v. *Eastern R. Co.,* 11 Cush. 97; *Malone* v. *Boston & W. R. Co.,* 12 Gray, 388; *Quimby* v. *Vanderbilt,* 17 N. Y. 306.

If the condition which is intended to limit the liability of the carrier be printed on the back of the ticket, no presumption arises that the party receiving it had any knowledge of it. *Limburger* v. *Westcott,* 49 Barb. 283; *McMillan* v. *Michigan, S. & N. I. R. Co.,* 16 Mich. 79; *Railroad Co.* v. *Manufacturing Co.,* 16 Wall. 318; *Brittan* v. *Barnaby,* 21 How. 527; *Verner* v. *Sweitzer,* 32 Pa. St. 208.

The leading question in this case is, the right of the plaintiff to recover damages for mental anguish suffered by him, by reason of failure and neglect of defendant to transmit the telegram. A telegraph company is a common carrier of intelligence. The intelligence may relate to a business transaction, or it may relate to matters of far greater importance, involving happiness and peace of mind. In the former case the telegraph company is held responsible. Shall it be permitted to escape all liability when it fails to do its duty in those more important matters committed to its care?

The legislature has declared that all actual damages are recoverable against a telegraph company for failure or neglect to transmit or deliver a message within a reasonable time after the reception thereof. Laws 1885, ch. 208, § 5. This court has held in a number of cases that injury to the feelings, even when unaccompanied by any injury to the person, property or health, is actual damage for which the party injured is entitled to recover. *Woodward* v. *Glidden,* 33 Minn. 108; *McCarthy* v. *Niskern,* 22 Minn. 90; *Larsen* v. *Chase,* 47 Minn. 307.

The courts of the following states have held such damages recoverable: Indiana, *Renihan* v. *Wright,* 125 Ind. 536; North Carolina, *Thompson* v. *Western Union Tel. Co.,* 106 N. C. 549; Tennessee,

*Wadsworth* v. *Western Union Tel. Co.*, 86 Tenn. 695; Alabama, *Western Union Tel. Co.* v. *Henderson*, 89 Ala. 510: Kentucky, *Chapman* v. *Western Union Tel. Co.*, 13 S. W. 880; Texas, *Western Union Tel. Co.* v. *Nations*, 82 Tex. 539; Illinois, *Logan* v. *Western Union Tel. Co.*, 84 Ill. 468; Kansas, *West* v. *Western Union Tel. Co.*, 39 Kan. 93; Dakota, *Russell* v. *Western Union Tel. Co.*, 3 Dak. 315; Missouri, *Connell* v. *Western Union Tel. Co.*, 116 Mo. 34; Mississippi, *Western Union Tel. Co.* v. *Rogers*, 68 Miss. 748; Florida, *International Ocean Tel. Co.* v. *Saunders*, 32 Fla. 434; Wisconsin, *Summerfield* v. *Western Union Tel. Co.*, 87 Wis. 1; Georgia, *Chapman* v. *Western Union Tel. Co.*, 88 Ga. 763.

The right to recover for mental anguish alone, unaccompanied with any other element of damage, has been recognized in many other states in actions other than those against telegraph companies: Wisconsin, *Craker* v. *Chicago & N. W. Ry. Co.*, 36 Wis. 657; Maryland, *Bannon* v. *Baltimore & O. R. Co.*, 24 Md. 108; Washington, *Willson* v. *Northern Pac. R. Co.*, 5 Wash. 621; Georgia, *Head* v. *Georgia Pac. Ry. Co.*, 79 Ga. 358; California, *Pleasants* v. *North Beach & M. R. Co.*, 34 Cal. 586; Massachusetts, *Fillebrown* v. *Hoar*, 124 Mass. 580; Illinois, *Chicago &c. R. Co.* v. *Williams*, 55 Ill. 185; Louisiana, *Byrne* v. *Gardner*, 33 La. An. 6; Pennsylvania, *Westchester & P. R. Co.* v. *Miles*, 55 Pa. St. 209; Minnesota, *Purcell* v. *St. Paul City R. Co.*, 48 Minn. 134; Maine, *Goddard* v. *Grand Trunk Ry. Co.*, 57 Me. 202; New Hampshire, *Beach* v. *Hancock*, 27 N. H. 223; Vermont, *Alexander* v. *Blodgett*, 44 Vt. 476; Alabama, *Lunsford* v. *Dietrich*, 86 Ala. 250; Michigan, *De May* v. *Roberts*, 46 Mich. 160.

The principal reasons given by the courts that have decided against the right to recover damages for injury to the feelings alone are: *First*, that it is an innovation upon the common law; *second*, that it opens up a new field of litigation; third, that such damages are difficult of ascertainment and calculation.

The principal reasons given by the courts that have decided in favor of the right to recover such damages are: *First*, no wrong exists without a remedy; *second*, such damages are recoverable in many other kinds of actions in which injury to the feelings is in real-

ity the only element of damage; *third*, such damages are uniformly recognized in connection with physical injury, or injury to character or reputation, and no good reason can be given for excluding such damages because unaccompanied with such other injury; *fourth*, when other than pecuniary benefits are contracted for, other than pecuniary standards should be applied, and the law authorizes a recovery of damages appropriate to the objects of the contract broken; fifth, injury to the mind as much as injury to the body is an injury to the person; *sixth*, such injuries are as actual, and often more acute and lasting, than injuries to the body; *seventh*, public policy.

MITCHELL, J.  The allegations of the complaint are that the plaintiff and his wife had been separated for some time "on account of a certain family trouble," she residing in Wyoming, in this state, and he in Indianapolis, Ind.; that he had been endeavoring to effect a reconciliation and a renewal of marital relations with her, and had written her on the subject, requesting her, in case a reconciliation was possible, to wire him to that effect, and to inform him how many physicians there were in a place called Lindstrom, with a view of his taking up his residence there, and engaging in the practice of his profession as a physician; that in response to this letter plaintiff's wife delivered to the defendant at Wyoming, for transmission, the following message, addressed to him: "Only one there. Yes, come;" and paid the sum charged for its transmission; that the defendant negligently failed to transmit or deliver the message to plaintiff at all; that, not receiving any message from his wife, he concluded that she was unwilling to renew her marriage relations with him, and feared that all hope of reconciliation with her was at an end; that he was kept in this mental state for more than three weeks before he learned that his wife had sent the message; that during this time, in consequence of the neglect of the defendant to transmit and deliver the message, "he suffered great mental pain, distress, and anguish, and sustained great damage to his feelings," for which he seeks to recover.

The evidence tended to show that the message was written on one of defendant's blanks, at the foot of which was printed, "Read the notice and agreement on the back." On the back was printed: "All messages taken by this company are subject to the following terms:

To guard against mistakes or delays the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery or for the nondelivery of any unrepeated message beyond the amount received for sending the same." "The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission."

It is conceded that this message was not ordered repeated, and that no claim for damages for its nondelivery was presented to the company within 60 days after it was filed for transmission.

Various questions arose on the trial with reference to these conditions, but this branch of the case can be very briefly disposed of.

The repeating of a message may prevent mistakes in its transmission, but can have no tendency whatever to prevent a failure to transmit it. Hence this condition is not applicable to this case, or, if intended to be so, it is, as to such a case, void, because unreasonable. The same is true of the "sixty-day" limitation. It is either inapplicable—at least, as to the addressee of the message—to a case of failure to transmit the message at all, or, if intended to be applicable, unreasonable, for the 60 days might elapse before the addressee ascertained that any message had been delivered for transmission. The company has probably substituted the words, "after the message is filed," for the words, "after sending the message," formerly used, in view of the decisions of the courts that the old form did not apply where the claim was founded upon a failure to send the message at all. But there are some things which cannot be accomplished even by artfully worded "fine print" conditions. Our conclusion that these conditions are either inapplicable or unreasonable, under the facts of this case, is founded on general principles, and without reference to the provisions of Laws 1885, ch. 208, entitled "An act to regulate the business of operating telegraph lines and imposing penalties for misconduct of owners and agents of such lines," the effect of which upon attempted stipulations for exemption from liability we have now no occasion to consider.

This brings us to the principal question in the case, viz. whether the addressee of a telegraphic message can recover damages for mental suffering caused by the failure of the telegraph company to transmit and deliver the message.

In the consideration of this question it is necessary at the outset to consider two preliminary questions, viz.: (1) Has the statute above cited, particularly section 5, changed the common-law rule? (2) What is the nature of such an action as this? Is it an action founded on contract, or is it one purely of tort?

Section 5 of the act provides that, if any person or company owning or operating a telegraph line in this state shall fail to transmit a message within a reasonable time, or if it is shown due diligence has not been exercised after reception thereof for that purpose, or shall fail to deliver the same to the party to whom the same is addressed, if known, within a reasonable time after its arrival at the point of destination, they "shall be liable in a civil action at the suit of the party injured for all actual damages sustained by reason of such neglect or omission."

The courts were not entirely agreed as to whether an action against the telegraph company could be maintained by the addressee, for whose benefit the message was intended, but who had no immediate contract relations with the company.

Again, assuming to follow the rule in *Hadley* v. *Baxendale*, 9 Exch. 341, that the damages which one party to a contract ought to recover for a breach of it by the other are such as either arise naturally from the breach itself or such as may reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of the breach, some courts held that under the latter clause of this rule consequential damages could not be recovered against a telegraph company unless the company was informed, either by the contents of the message or otherwise, of the nature of the subject-matter to which the message related, and that, where it was ignorant of this, only nominal damages, or the amount paid for the transmission of the message, could be recovered.

We are of the opinion that the only object of section 5 was to settle both these questions, and to establish the rule—*First*, that the party injured, whether sender or addressee, may maintain an action; and, *Second*, to hold the company liable for all actual dam-

ages proximately resulting from the breach of its contract, regardless of whether or not it was advised of the nature of the subject-matter of the message. In other words, that the company has nothing to do with, and has no right to speculate upon, the extent of the interest of either sender or addressee in the message, or as to its value or importance; that, when it receives a message for transmission and delivery, the company has but one duty to perform, viz. to transmit and deliver it correctly, and without unreasonable delay, and if it fails to do so it will be liable for all actual damages, although not of a character such as would be suggested by the message as the probable result of a failure to transmit and deliver it. The statute does not define actual damages, but leaves that to be determined by common-law rules. We are therefore of opinion that the statute has no bearing on the question before us. It is hardly necessary to add that the same is true of the declaration in the bill of rights that every person is entitled to a certain remedy in the law for all injuries or wrongs which he may receive in his person, property, or character. This is but declaratory of a general fundamental principle upon which the courts have always acted, and which would have been the law even if not incorporated in the constitution. It creates no new legal rights or new legal wrongs, and establishes no new rule of damages. It merely declares that for any wrong, recognized as such by law, a person shall have a remedy to obtain the redress to which he is entitled according to the principles of law.

This action is not one of tort, but on contract; its gist and gravamen being the breach of the contract, the duties and obligations growing out of which are regulated by the statute, which itself becomes a part of it. The best test of this is the fact that such an action could not be maintained without pleading and proving the contract.

We are therefore left to determine the question here presented according to the rules of the common law applicable to actions for damages for breach of contract. In such actions, can damages be recovered for mental suffering resulting from a breach of the contract?

The law has always been exceedingly cautious in allowing damages for mental suffering, for the manifest reasons, among others, that such damages are more sentimental than substantial, depending largely up-

on temperament and physical and nervous condition. The suffering of one under precisely the same circumstances would be no test of the suffering of another, and there being no possible standard by which such an injury can be even approximately measured, they are subject to many, if not most, of the objections to speculative damages which are universally excluded. In no case will an action for damages lie for mental suffering caused by an act which, however wrongful, infringes no legal right of the party. In actions for a tort resulting in physical injuries, of which mental suffering forms a component part, the latter is permitted to be taken into account in the assessment of damages; and where the tort is willful, and of a character as naturally and necessarily to injure the feelings, damages for such injuries are sometimes allowed, although there was no physical injury or pecuniary loss. *Larson* v. *Chase*, 47 Minn. 307, (50 N. W. 238,) perhaps goes as far in that direction as any case to be found in the books. In this latter class of cases such damages are often but another name for punitive damages. But we are not concerned here with the question when such damages may be recovered in actions of tort. We think we are warranted in asserting that the doctrine that damages for mental suffering resulting from a breach of contract is wholly unknown to and unauthorized by the common law, unless "telegraph cases" are to be made an exception. An action for breach of promise of marriage is sometimes spoken of as an exception; but that action has always been recognized as *sui generis*. It is an action for breach of contract only in form and name, and in many of its essential features has always been considered as one for a willful tort. We have no desire to discuss at length a question which has been so often and so fully considered of late years by the courts in these telegraph cases. The strongest argument we have found in favor of allowing damages for mental suffering resulting from the nondelivery of a telegraph message is the opinion of the court in *Wadsworth* v. *Western Union Tel. Co.*, 86 Tenn. 695, (8 S. W. 574.) It advances all that can be said on that side of the question, and puts it strongly and plausibly. Aside from the dissenting opinion of Linton, J., in the same case, the strongest arguments that we have found against the allowance of such damages are the opinions in *Chapman* v. *Western Union Tel. Co.*, 88 Ga. 763, (15 S. E. 901;) *Western Union Tel. Co.* v. *Rogers*, 68 Miss. 748,

(9 South. 823;) and *Connell* v. *Western Union Tel. Co.*, 116 Mo. 34, (22 S. W. 345.) These cases contain about all that can be advanced on either side of the question. It is somewhat remarkable that, although telegraphy has now been in use for over fifty years, it never seems to have occurred to any court, or, so far as we can discover, to any lawyer, that damages were recoverable for mental suffering resulting from neglect to transmit or deliver a telegram until it was so held in 1881 by the Supreme Court of Texas in *So Relle* v. *Western Union Tel. Co.*, 55 Tex. 308, citing in support of the doctrine only actions in tort for physical injuries. This decision has, with more or less variations, been followed by the same court in a long line of later cases; but the doctrine seems to have involved that court in some very glaring inconsistencies, compelled, perhaps, by the necessities of the situation in which the court has placed itself. The multitude of cases of this character in that state since the decision of the *So Relle* case indicates the vast field of speculative litigation opened up by that decision, and how difficult the subject is of control by the courts. In *Rowell* v. *Western Union Tel. Co.*, 75 Tex. 26, (12 S. W. 534,) the court, apparently impatient at the amount of "intolerable litigation" to which the doctrine had given rise, seems to have gone back, partially at least, upon their former decisions. In that case the plaintiff had received information of the dangerous illness of his mother-in-law. A subsequent dispatch was sent, containing information of her improved condition. This dispatch the telegraph company failed to deliver. The court held that for continued mental anxiety caused by the nondelivery of the message the plaintiff could not recover.

The "Texas doctrine," with more or less modification, has quite recently been adopted by the courts of Alabama, Kentucky, Tennessee, North Carolina, and Indiana. The harvest of "intolerable litigation" which is being reaped in Texas has not yet matured in those states, but certainly will if the doctrine is adhered to.

The "Texas doctrine" has been favorably referred to in many of the more recent text-books, but the bench and bar will understand of how little weight as authority most of these books are, written as they very frequently are, by hired professional book-makers of no special legal ability, and who are usually inclined to take up with the latest legal novelty for the same reasons that newspaper men are

anxious for the latest news. On the other hand, the doctrine has been vigorously repudiated by the courts of Georgia, Mississippi, Florida, Missouri, Kansas, Wisconsin, Dakota Territory, Arkansas, and perhaps some other states; also, with practical unanimity, by all the United States circuit courts and circuit courts of appeal which have passed upon the question. The supreme court of the United States has not yet been called on to pass upon the question; but, in view of the general tenor of the decisions of that court on kindred questions, there is every reason to believe that when the question is presented its decision will be that such damages are not recoverable.

No lawyer as yet seems to have had the temerity to present such a case to a court of last resort in any of the eastern or northeastern states.

Some of the decisions holding that such damages are recoverable proceed upon the assumed but false analogy of torts resulting in physical injury accompanied with mental suffering, or where the tort was willful, and calculated and intended to injure the feelings; as, for example, slander, libel, and the like. Others very plausibly argue that such cases are new only in instance, and not in principle, that the principle applicable to all actions on contract is that a party is liable for all damages proximately resulting from its breach; that the reason that in such actions no recovery has usually been allowed for mental suffering is that the contracts were of a business or commercial character, not involving the feelings; that telegraphy is a modern invention; that a telegraph company is a carrier of intelligence often sent for a purpose not pecuniary, but relating wholly to matters of sentiment or feeling; and that, therefore, the damages resulting from the breach of a contract to transmit such intelligence are not to be, and cannot be, measured by any pecuniary standard, but according to the standard of injury to the feelings. In other words, that damages for which a person is liable for breach of contract depend on the nature of the contract. If it is pecuniary in its nature, only pecuniary damages will be allowed, but, if it relates to the feelings, then damages for injury to the feelings will be allowed.

But we deny the correctness of the premise upon which this argument is based. The law looks only to the pecuniary value of a contract, and for its breach awards only pecuniary damages. An

action for breach of promise of marriage, as already remarked, is only an apparent, and not a real, exception to the rule. We recognize the fact that the common law is not a code of cast-iron rules, but a system of principles capable of being applied to new conditions as they arise; and when a case arises which falls within a recognized legal principle the fact that it is new in instance will not and ought not to stand in the way of the courts applying the principle. But to allow damages for injury to the feelings resulting from a breach of contract—even one like this—would be, not to apply an old principle to a new instance, but to adopt a new principle entirely unknown to the law. Courts have no more right thus to abrogate the common law than they have to repeal the statutory law. Lord Coke said: "The wisdom of the judges and sages of the law has always suppressed new and subtle inventions in derogation of the common law." The wise remark of another, peculiarly applicable to the present time, was that "the variety of judgments and novelties of opinions are the two plagues of a commonwealth." The great lights of the law may take some liberties with the law in the way of new applications of old principles that modesty would forbid to ordinary men; and while we are not disposed to look upon everything ancient with slavish reverence merely because it is ancient, it would certainly be presumptuous in us to lightly discard a doctrine which has been so long approved, and which is so firmly established by authority. The principles of the common law were founded upon practical reasons, and not upon a theoretical logical system; and usually, when these principles have been departed from, the evil consequences of the departure have developed what these reasons were. The Pandora box that has been opened by the "Texas doctrine" proves more forcibly than argument the wisdom of the common-law rule that damages of this kind cannot be recovered in actions on contract. And, if damages of this kind are to be allowed for the breach of a contract of this character, where are we to stop? Upon what legal principle can a court refuse to allow them for the breach of any other contract? The breach of any contract—even the failure of a debtor to pay his debt at maturity—may result in more or less mental anxiety or suffering to the party to whom the obligation is due. Why not allow damages for the mental suffering or disappointment of passengers caused by the delay of trains

through the negligence of the carrier? The object of the journeys of travelers is often not pecuniary, but to visit sick relatives or attend the funeral of deceased ones, which are matters affecting the feelings as much and as exclusively as a telegram. If the train is delayed through the negligence of the carrier, so that the passenger does not reach his destination in time to accomplish his desired object, why is he not entitled to damages for his disappointment and mental suffering as much as the sender or addressee of a delayed telegram? See *Wilcox* v. *Richmond & D. R. Co.*, 52 Fed. 264. The truth is, once depart from the old rule, and we are all at sea, without either rudder or compass. Any other doctrine is unauthorized by any principle of law, and would, we are satisfied, work badly in practice, giving rise to a flood of speculative litigation uncontrolled by any guide as to the measure of damages except the whim of the jury, or the arbitrary standard that may be adopted by the particular judge who tries the cause.

It is suggested that the transmission of intelligence by electricity is a comparatively new thing; that contracts of this kind are unlike any others; that, as messages frequently have no pecuniary value, and consequently a failure to transmit them would result in no pecuniary loss, although it might cause great anxiety or disappointment, therefore, unless damages for mental suffering are allowed, none could be recovered that would adequately compensate the party or adequately punish the telegraph company for its neglect of duty. If this be so, it would only go to prove that, in the progress of the world, a new condition of things has arisen for which the existing law is not adequate, and which calls for legislative interposition. This has been done in some jurisdictions by subjecting a telegraph company to a certain penalty to be recovered by, and for the benefit of, the party interested in the message. Whether this is wise or not, it is certainly better than to leave it to the courts or juries to assess the vague, shadowy, and sentimental damages caused by mental anxiety or injured feelings.

Order reversed.

BUCK, J., absent, sick, took no part.

CANTY, J. I reluctantly agree to the foregoing opinion. I fully agree with the reasoning in *Wadsworth* v. *Western Union Tel. Co.*,

86 Tenn. 695, (8 S. W. 574,) above cited, that there ought to be a remedy in such a case as this; that it ought to be an exception to the rule that damages cannot be recovered for mental suffering unaccompanied by actual or threatened physical injury, except in the few instances where it is allowed as a species of punitive damages. But the difficulty is in the character of the damages. The injuries in such cases as this are too hard to determine with any reasonable certainty, are more often assumed than real; and the suit too liable to be wholly speculative. If every one was allowed damages for injuries to his feelings caused by some one else, the chief business of mankind might be fighting each other in the courts. Damages for mental suffering open into a field without boundaries, and there is no principle by which the court can limit the amount of damages.

Mere logic will not dispose of a question of this character. The court must keep one eye on the theoretical, and the other on the practical.

At the same time I am strongly of the opinion that there should be some practical remedy in this class of cases, and, if the legislature would provide for the recovery of damages for mental suffering in cases like this, and limit the amount of recovery to, say, two or three hundred dollars, there would not be the same incentive to bring speculative suits, or to employ experts to draw on their own imagination for the purpose of proving the condition of the plaintiff's imagination; there would not be so much elaborate preparation to impose on the jury. But, if the court should allow such damages at all, on no principle could it thus arbitrarily limit the amount of recovery, and escape the evils mentioned.

(Opinion published 59 N. W. 1078.)