G. WILLIS PETERS v. CITY OF DULUTH and Others.[1]

July 26, 1912.

Nos. 17,639—(202).

**Registration of title — demand for jury trial.**

In proceedings to register a land title, under R. L. 1905, c. 65, commonly known as the Torrens law, no appeal lies from a denial of a defendant's application for a jury trial, nor from an order denying a defendant's motion to dismiss the application.

**Same.**

Neither the registration act nor the general law of the state confers any absolute right to a jury trial upon any of the issues that may arise in registration proceedings.

**Right of trial by jury.**

Const. Art. 1, § 4, providing that "the right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy," does not apply to a proceeding, under R. L. 1905, c. 65, to register a land title.

**Act not unconstitutional.**

Section 3389 of this chapter, relative to dismissals of applications to register, does not render the act invalid as in violation of Const. Art. 1, § 8, declaring that there shall be a remedy for every wrong, etc.

**Registration of title.**

The right to apply for the registration of a land title is not affected by the availability or adequacy of other remedies.

Application by the sole surviving trustee under the last will of John L. Dodge, deceased, to the district court for St. Louis county, to register title to land under the Torrens law. Louis Polinsky, one of the defendants brought into the proceedings in accordance with the report of the examiner, filed his answer, and demanded a trial by jury. He also moved that the proceeding be dismissed upon the grounds enumerated in the first paragraph of the opinion. From

[1] Reported in 137 N. W. 390.

an order, Dancer, J., denying the motions, defendant Polinsky appealed. Dismissed.

*J. B. Arnold* and *B. M. Goldberg,* for appellant.
*Crassweller, Crassweller & Blu,* for respondent.

PHILIP E. BROWN, J.

Application to register title under the Torrens law. The application showed and the examiner found title in the applicant proper for registration, and also that the land was unoccupied, except that the appellant, Louis Polinsky, and several others, were using the same for pasture purposes, as licensees at will, under an oral license from the applicant. The examiner further found that the said Polinsky had erected a small barn upon part of the premises, and recommended that the said persons should be made parties to the proceeding, and that the applicant be granted the relief prayed. The said Polinsky, having been made a party, filed an answer, claiming fee ownership by adverse possession of the land covered by the application; and, further, that the court had no jurisdiction to try the action, and that the form of action was not such as was required by the Constitution or statutes to try the right of possession of lands; and upon the issues made by the application and the answer he demanded a jury trial. This demand was denied; whereupon he moved to dismiss the action on the following grounds: (1) Because it appears on the face of the proceedings that the defendant Polinsky is in the actual and also the adverse possession of the land; and hence that the court had no jurisdiction to try the action and to determine the rights of the parties therein. (2) Because the action, by the pleadings, is one to determine the right of possession of real estate against a party in possession, and the defendant has been refused a jury trial; and, further, because the registration act is unconstitutional and void as to the defendant. (3) Because the registration act does not provide for the trial of the rights of the defendant on the merits; and hence is unconstitutional and void as to the defendant. This motion to dismiss was denied, and from the order denying the defendant's demand for a jury trial, and also the order denying his motion to dismiss, he appealed.

The appellant's contentions, as reformulated in his brief, and in the order in which we will consider them, are: (1) That the refusal of the court to grant a jury trial was a denial of a right guaranteed by Const. Art. 1, § 4; (2) that the court had no jurisdiction to try the action on the showing of possession, for the reason that the law under which the application is made does not provide for a complete trial of the issue under Const. Art. 1, § 8; (3) that the applicant has a plain and adequate remedy at law, which appears on the face of the proceedings, to wit, ejectment; and that the action should be dismissed on this account.

1. At the outset we are confronted with a question, not insisted upon by the respondent, but necessary, nevertheless, to be considered, namely, the appealability of the orders appealed from, and we hold that they are not appealable. In view, however, of the importance of the questions involved, we have decided to discuss the case upon its merits.

2. The statute under consideration is more or less similar to the registration acts of a number of other states, and provides for what is commonly called the "Torrens System" of registration of land titles; such system being named after Sir Robert Torrens of South Australia, who first introduced it into use among English-speaking people, though a similar system had been in vogue in some parts of the present German Empire for many years. Tiffany, Real Property, p. 1101. It is worthy of notice, in this connection, that Sir Robert was not a lawyer. He was a collector of customs, and very probably he worked out his system through analogy to the method by which the government furnished a certificate as evidence of one's ownership of a vessel. Manifestly his intent was to free land titles from the indictment of common sense, which is often framed in the impatient and seemingly unanswerable question: Why should there be any greater uncertainty of ownership of land than of personalty, and why should land titles have to be searched through a "godless and profitless jungle ?"

The system was introduced into South Australia in 1858; and while, since that time, it has found more or less favor with people of English extraction, it seems that it yet has thorny paths to tread. Its

author, as aptly said by the writer of the learned and interesting article on this system in 54 Central Law Journal, 285, "little knew, we may assume, the immeasurable distance which the common law had placed between rights of ownership of real estate and of personal property. He never dreamed that, out of the dead past, the ghostly hand of the 'unknown claimant,' the 'party entitled to notice,' 'the person under disability,' 'the absent defendant,' and other well-known spooks clad in the dignity of judicial decisions of many generations, is held able to stretch out and fasten upon real property as distinguished from personalty." Nor, we may add, did he foresee the narrow path the system would have to tread through the many and various limitations of the American Constitution, before it could establish itself in the states of the American Union. Yet such has been the case; and, while its constitutionality has been vindicated in this and also a number of other states, as against assault made upon various grounds, undoubtedly it yet has further tests to undergo in such regard—witness the attack in the instant case.

Ohio seems to have enacted the first act adopting the Torrens system; but such act was promptly declared unconstitutional as not providing for sufficient notice, and for lack of judicial proceedings. State v. Guilbert, 56 Oh. St. 575, 629, 47 N. E. 551, 38 L.R.A. 519, 60 Am. St. 756. Illinois came next, with an act which, after amendment, was declared constitutional in People v. Simon, 176 Ill. 165, 52 N. E. 910, 44 L.R.A. 801, 68 Am. St. 175. Next came Massachusetts, with an act which was sustained in Tyler v. Judges, 175 Mass. 71, 55 N. E. 812, 51 L.R.A. 433, and then followed California, Colorado, Oregon, and Minnesota; the acts of the two former being declared constitutional in Robinson v. Kerrigan, 151 Cal. 40, 90 Pac. 129, 121 Am. St. 90, 12 An. Cas. 829, and People v. Crissman, 41 Colo. 450, 92 Pac. 949, respectively, and the Minnesota law being sustained in State v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L.R.A. 297, 89 Am. St. 571.

The attacks upon the various acts mentioned were based upon one or more of the grounds urged in the case last cited, viz., denial of due process of law, violation of the constitutional provision relative to the severance of the three several departments of government, viola-

tion of provisions relative to the election of county officers and provisions relative to special legislation; but in each instance, as above recited, except in Ohio, the law has been sustained.

It would seem that, in the course of the attacks upon the validity of the system in question as a law, the grounds of attack would have been exhausted, and that we would have some direct precedent to guide us in the instant case; but we have neither been cited to nor found any case directly in point, and must, therefore, determine the questions here involved practically as of first impression, though not without abundant analogies and authorities upon the basic principles upon which our determination must rest. Furthermore, the history of the Torrens system, as briefly outlined above, may well be considered as shedding considerable light upon the intent and purpose of the system in general and in our own state in particular, and as thus affording some assistance in determining the nature of the proceedings by which a Torrens title is perfected; for upon such latter consideration the vulnerability of the statute to the present attack largely depends.

3. One other question presents itself before we come directly to the constitutional questions here involved, and that is whether, under the registration act and the general laws of the state, the appellant was entitled to a jury trial in the instant case; for, if he was so entitled, no constitutional right to a jury that he may have had can have been violated by the statute, and there would be only a judicial error involved in this branch of the case. However, we are satisfied that neither such statute nor the general law contemplates a jury trial as a matter of right. The provision of the registration act relative to trial is as follows:

"3388. Trial—Reference. Where an answer is filed, the case shall be tried by the court in like manner as an ordinary civil action. The court may refer the case, or any part thereof, to one of the examiners, as referee, to hear the parties and their evidence, and make report thereon to the court. Any report of an examiner shall have the same weight as that of a referee appointed by the district court. After the filing of such report, the court may order such other or further hearing of the cause before the court, or before the

examiner, and may require such other or further proof by either or any of the parties to the cause as it shall deem proper."

Manifestly there is here no affirmative expression of an intent that any issue in the proceedings shall be tried by a jury. Indeed, it would seem that the contrary was intended. Nor is any right to a jury in these proceedings conferred by the general law, which is as follows: (R. L. 1905, § 4164.)

"In actions for the recovery of money only, or of specific real or personal property, or for a divorce on the ground of adultery, the issues of fact shall be tried by a jury, unless a jury trial be waived or a reference be ordered. All other issues of fact shall be tried by the court, subject to the right of the parties to consent, or of the court to order, that the whole issue, or any specific question of fact involved therein be tried by a jury or referred."

The only provision here which could possibly be invoked as giving the right to a jury trial in registration proceedings is that relative to the recovery of specific real property, and suffice it to say that no such recovery is contemplated by the registration act, and none can be had thereunder. Whether, under such act or the general law, the court, in its discretion, could order a jury trial is not here involved and was not argued, and we do not deem it necessary to determine.

4. The next question, then, is, Does the constitutional provision relative to the right to a trial by jury apply? In Massachusetts it has been held that the right to a jury trial cannot be denied in registration proceedings, where the title to real property is involved (Weeks v. Brooks, 205 Mass. 458, 92 N. E. 45); but the constitutional provision in that state is that there shall be a right to a jury trial "in all controversies concerning property" (Const. Mass. 1780, Pt. 1, Art. 15), which is very different from the provision of our Constitution. The latter (Article 1, § 4) provides:

"The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy."

It is settled beyond question that this provision merely preserves the right to trial by jury as it existed at the time of the adoption of

the constitutional provision. State v. Kingsley, 85 Minn. 215, 88 N. W. 742; State v. Minnesota Thresher Mnfg. Co. 40 Minn. 213, 41 N. W. 1020, 3 L.R.A. 510; In re Howes, 38 Minn. 403, 38 N. W. 104; Bruggerman v. True, 25 Minn. 123; Board of Commrs. of Mille Lacs County v. Morrison, 22 Minn. 178; Ames v. Lake Superior & Mississippi R. Co. 21 Minn. 241; Whallon v. Bancroft, 4 Minn. 70 (109). Said Gilfillan, C. J., in Board of Commrs. of Mille Lacs County v. Morrison, supra, at page 181, after making an extensive review of the cases from this and other states and announcing the rule as we have stated it:

"It is not, of course, to be understood from this that the right to a jury trial will depend on the form of the action or proceeding, or that the legislature may, by changing the form of proceeding or remedy, take that mode of trial from those rights to which the Constitution intended to secure it. The Constitution of Vermont provides: 'Trial of issues proper for the cognizance of a jury in the supreme and county courts, shall be by jury, except when parties otherwise agree.' This, though differently expressed, is substantially the same as the provision in the Constitution of this state. The Supreme Court of Vermont, discussing this clause in Plimpton v. Town of Somerset, 33 Vt. 283, said: 'All rights, whether then or thereafter arising, which would properly fall into those classes of rights to which, by the course of common law, the trial jury was secured were intended to be embraced within this article.' This is the best definition that we have found of the classes of cases to which the trial by jury is secured; for it makes the right to such a trial depend on the nature and character of the controversy, and not on the form of action or proceeding in which it is to be determined."

Again, the rule, as stated in Lommen v. Minneapolis Gaslight Co. 65 Minn. 196, 209, 68 N. W. 53, 54 (33 L.R.A. 437, 60 Am. St. 450), and approved in State v. Kingsley, supra, is that, under the Constitution, parties are entitled to a jury trial "in those cases in which they were entitled to jury trial by the laws of the territory at the time of the adoption of the Constitution."

The question before us, then, is: What is the real nature of the proceedings under the registration act, and do the issues which arise therein, and, specifically, the issue of title here involved, make cases,

or a case, in which the parties would have been entitled to a jury trial prior to the adoption of the Constitution?

The registration act is too long to set out herein; nor do we deem it necessary to refer specifically to its various provisions in detail. In discussing the general question of the constitutionality of the Torrens laws, we have already pointed out the general purpose of such laws, viz., to clear up and settle land titles; and there is at once suggested the question as to what the existing or former remedies for this purpose were, the answer to which is, quieting title and removal of cloud. And such has been declared to be the nature of registration proceedings. See Tiffany, Real Property, § 488, p. 1101; State v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L.R.A. 297, 89 Am. St. 571. See also Owsley v. Johnson, 95 Minn. 168, 103 N. W. 903, where the proceeding is declared to be an equitable one.

"It is now the settled doctrine of this court," said Chief Justice Start, in State v. Westfall, supra, at page 444, [89 N. W. 177, 57 L.R.A. 297, 89 Am. St. 571], "that the district courts of this state may be clothed with full power to inquire into and conclusively adjudicate the state of the title of all land within their respective jurisdictions. * * * The proceeding provided for by the act in question is such a one. * * * To hold otherwise would be to hold that the courts of this state cannot in any manner acquire jurisdiction to *clear and quiet the title to real estate*. * * * That the courts of this state have jurisdiction to so *clear and quiet title* by their decrees is no longer an open question in this state." We have italicized certain words in the above quotation. The Chief Justice was discussing the constitutionality of the registration act, with reference to the service of process and due process of law, and by the deliberate use of the analogy adopted clearly indicates the court's conception of the nature of the registration proceedings.

However, even if we had no precedent to guide us, we think it clear, from a mere reading of the statute, that such is the nature of the proceeding provided for thereby; and, such being the case, it follows that the constitutional right to a jury trial does not apply. There was no such right upon the ancient bill to remove cloud and

quiet title, and it has been held in this state that the constitutional
guaranty does not apply thereto. Yanish v. Pioneer Fuel Co. 64
Minn. 175, 66 N. W. 198. It was held in that case that the de-
fendant had no right to a jury trial in an action by an assignee in
insolvency to set aside an execution sale and to cancel the record
of the plaintiff's certificate. Said the court at page 179 [66 N. W.
200]:

"The next question arises upon the right of the defendant to a
jury trial. This action was not brought for the recovery of money
only, or of specific real or personal property. Title to the real es-
tate in question passed to the respondent by virtue of the deed of
assignment, and the defendant's judgment, and its sale of the prop-
erty under the execution on the judgment, constituted a cloud upon
the respondent's title to the property; and he had a right to invoke
the equitable power of the court to remove the cloud of an apparent
lien of the judgment, set aside the sheriff's sale, and cancel the
sheriff's certificate. Such an action is not triable by a jury. Al-
though the practical result would be the recovery of the property,
yet the gist of the action is to get rid of a cloud resting upon the
title, and thus make the property available as assets for the payment
of the insolvent's creditors."

Again, it has been held that such provision does not apply to the
statutory action to determine adverse claims. Roussain v. Patten,
46 Minn. 308, 48 N. W. 1122; Johnson v. Peterson, 90 Minn. 503,
97 N. W. 384. Said Collins, J., in delivering the opinion of the
court in the latter case: "Except as otherwise provided by statute,
all the ordinary rules governing suits in equity to quiet title apply
to this action, and it was triable by the court, and not by a jury;
* * * and the fact that the answer contained a counterclaim in
the nature of ejectment did not change the procedure."

Exactly in line with the above authorities, and only a step in ad-
vance, it seems to us, is it to hold that neither is there any constitu-
tional guaranty of a jury trial in this registration proceeding, which,
to our mind, is nothing more or less than an enlargement of the rem-
edy to quiet title. The fact that the ultimate right of possession may
be involved does not change the nature of the proceeding. Such right

is involved in all actions concerning the title to real property. Buffalo Land & Exploration Co. v. Strong, 101 Minn. 27, 111 N. W. 728; Tew v. Webster, 106 Minn. 185, 118 N. W. 554; Bracken v. Trones, 118 Minn. 18, 136 N. W. 281. If, therefore, we should adopt the rule contended for by the appellant and apply it to its logical limit, then every action wherein the title to real property was in question would necessarily be for a jury. Such was not the law in territorial days, and is not now.

5. The appellant's other constitutional point is that the statute violates Const. Art. 1, § 8, which is as follows:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely and without purchase; completely and without delay, conformably to the laws."

This provision, the appellant claims, is violated by the following provision of the statute (R. L. 1905, § 3389):

"Dismissal—If the court shall find after hearing that the applicant has not a title proper for registration, an order shall be entered dismissing the application, which may be without prejudice. The applicant may upon motion dismiss the application at any time before the final decree entered upon such terms as shall be fixed by the court."

It is contended that this provision precludes a final adjudication of the defendant's rights in any case, and in the instant case precludes an adjudication of his claim of title by adverse possession; and that for this reason the statutory proceeding is invalid. We cannot sustain this contention. As pointed out in the respondent's brief, the same objection may, to a certain extent, be urged against any civil action in which the defendant files no counterclaim.

The constitutional provision, furthermore, relates primarily to the assertion of affirmative rights, and the defendant here, being in possession, had the right, prior to the proceeding here involved, to clear up his title, if any he had, by an action to quiet title; and in the present proceeding the court is abundantly authorized and empowered to adjudicate his title completely and fully as against the applicant (Hendricks v. Hess, 112 Minn. 252, 255, 127 N. W. 995;

Reed v. Siddall, 94 Minn. 216, 102 N. W. 453), which is all that is accorded the defendant in any civil action, except where he takes the proper steps for affirmative relief. This provision has been held not to create any new right, but to be merely a declaration of a general, fundamental principle. Francis v. Western Union Tel. Co. 58 Minn. 252, 59 N. W. 1078, 25 L.R.A. 406, 49 Am. St. 507; Beaulieu v. Great Northern Ry. Co. 103 Minn. 47, 114 N. W. 353, 19 L.R.A.(N.S.) 564, 14 An. Cas. 462. That class of provisions to which the one here in question belongs is "not, and from the nature of the case cannot be, so certain and definite as to form rules for judicial decisions in all cases, but up to a certain point must be treated as guides to legislative judgment, rather than as absolute limitations of their power." Allen v. Pioneer Press Co. 40 Minn. 117, 123, 41 N. W. 936, 938 (3 L.R.A. 532, 12 Am. St. 707). It has also been held that this provision is not violated solely because the granting of the remedy rests in the sound discretion of the court. Wieland v. Shillock, 24 Minn. 345. The statute in question merely vests in the court the power, to be exercised in its sound discretion, to save the applicant's rights in a proper case, and does not violate the constitutional provision invoked against it.

6. The appellant's last contention is that, as the applicant was out of possession and the appellant was in possession, the former had a plain and adequate remedy at law; and that hence the application to register should have been dismissed. The contention is that the act contemplates registration only at the instance of a fee title owner in posssession, and not by an "apparent owner," who is not in possession. We think, however, that this contention cannot prevail. The purpose of the statute is to provide a speedy and summary remedy to clear up title to land. Reed v. Siddall, 94 Minn. 216, 102 N. W. 453. The remedy provided is not a substitute for an action of ejectment, as we have already noted, and a successful applicant may have to resort to ejectment to obtain possession. The statute, furthermore, in several places makes provision looking to cases where the land is occupied by another than the applicant, among which is the following (R. L. 1905, § 3375), relative to the contents of the application, subd. 6:

"Whether the land is occupied or unoccupied. If occupied by any other person than the applicant, it shall state the full name and address of each occupant, and the nature of the estate, interest, lien or charge which such occupant or occupants have, or claim to have, in the land."

See also State v. Westfall, supra; Kuby v. Ryder, 114 Minn. 217, 130 N. W. 1100. Nor can we sustain the contention that the applicant's title must be settled before he can apply. The very purpose of the proceeding is to settle the title. See State v. Westfall, supra; National B. & S. Co. v. Alderson, 99 Minn. 137, 108 N. W. 861; Hendricks v. Hess, supra.

Since, then, the right to invoke the remedy is given by the statute, the adequacy and availability of other remedies are immaterial. Moreover, the relief in ejectment is not coextensive with that which may be had upon an application to register. As against any one party or set of parties, it may be practically the same; but it needs no argument to show that a title could never, in ejectment, be settled as against the whole world, as can be done upon an application to register. And, conversely, relief may be had in ejectment which cannot be had in the registration proceeding, viz., possession of the premises. The remedies are distinct and different; and hence the appellant's point in this regard is not well taken.

Appeal dismissed.