JENNIE D. BEAULIEU v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 27, 1907.

Nos. 15,382—(48).

**Damages—Mental Anguish.**

Damages for mental anguish can be recovered in an action for breach of contract only in those exceptional cases where the breach amounts, in substance, to an independent wilful tort.

**Transportation of Corpse.**

In an action for damages for breach of contract by a railway company to transport a corpse over its line to a particular point, delivering it there to an intersecting carrier to be conveyed to its place of destination, the breach consisting in the negligence of the company's agents and servants in carrying the corpse beyond the connecting point, thus causing a delay of twenty four hours in the funeral arrangements, it is *held* that, in the absence of wilful or malicious misconduct on the part of the company or its agents, damages for mental anguish cannot be recovered.

**Complaint.**

The complaint construed, and *held* not to state a cause of action within this rule, though it does state a cause of action for nominal damages.

[1] Reported in 114 N. W. 353.

Action in the district court for Red Lake county to recover $3,000 for delay in transporting the dead body of plaintiff's child over defendant's road. From an order, Watts, J., overruling its demurrer to the amended complaint, defendant appealed. Affirmed.

*M. L. Countryman,* for appellant.

*W. E. Dodge* and *Wm. A. Tautges,* for respondent.

BROWN, J.

Defendant interposed a general demurrer to the complaint in this action, and appealed from an order overruling the same.

The complaint alleges, in substance, that plaintiff's child, aged three and one-half years, died at Cass Lake, and plaintiff desired that the body should be buried at Ogahmah. The body was accordingly prepared for burial, and delivered to defendant for shipment to that place. The shipment required a transfer of the casket containing the body at Erskine, where the defendant's road connects with the Soo Line, over which the plaintiff and the corpse were to reach Ogahmah. The complaint further alleges that it was the duty of defendant to put the corpse off its train at said Erskine, to the end that it might be transferred to the Soo train, but that, instead of doing so, its servants and agents wrongfully and unlawfully retained possession thereof, and "negligently, wrongfully, and unlawfully, and with utter disregard to the rights and feelings of this plaintiff," carried the corpse beyond that station, and to the city of Crookston, thus delaying the funeral arrangements for twenty four hours; that, by reason of this delay, the corpse became badly "decayed, mutilated and damaged." As to the nature and character of the injury and damage to plaintiff, it alleges:

"That said funeral was to take place at White Earth on the 21st day of July, 1906, at three o'clock p. m., as stated, and at said time and place the plaintiff had her priest and mourners in attendance, but, by reason of the premises, said funeral and burial could not take place at said time, causing this plaintiff great annoyance and damage. That, by reason of the said negligent, wrongful, and unlawful acts of said defendant, this plaintiff has been greatly damaged, and has been greatly outraged in her feelings, and has suffered great distress of mind and great mental pain and anguish, and has become sick

and nervous, and will continue to suffer great mental pain and anguish in the future, all to the plaintiff's damage in the sum of $3,000."

The complaint charges no wilful or intentional misconduct on defendant's part, or on the part of its agents, no claim is made for actual damages and the allegations thereof, taken as a whole, show only a failure to transport the corpse of plaintiff's child to Erskine, leaving it there for reshipment over the other line to the place of destination, in accordance with its contract. The principal question for consideration, therefore, is whether on the facts stated a recovery may be had for the mental suffering endured by plaintiff in consequence of defendant's neglect.

The question whether mental anguish is a proper element of damage, either in actions in tort or for a breach of contract, has been presented to the courts in numerous cases, and there is much conflict of opinion upon the subject. According to the weight of authority, such damages may be recovered in all actions in tort where the plaintiff has suffered physical injury at the hands of the defendant, whether from malice or mere negligence (6 Current Law, 631, 8 Am. & Eng. Enc. [2d Ed.] 658); also in that class of torts where the plaintiff is subjected to some indignity, as in libel, slander, malicious prosecution, or seduction (8 Am. & Eng. Enc. [2d Ed.] 668; 13 Cyc. 44); and, again, in those wilful wrongs where some legal right has been invaded, though no physical injury is inflicted or character or reputation assailed (Lesch v. Great Northern Ry. Co., 97 Minn. 503, 106 N. W. 955; Purcell v. St. Paul City Ry. Co., 48 Minn. 134, 50 N. W. 1034, 16 L. R. A. 203; Sanderson v. Northern Pac. Ry. Co., 88 Minn. 162, 92 N. W. 542, 60 L. R. A. 403, 97 Am. St. 509).

But such damages are not recoverable in all actions in tort. Broadly stated, their allowance is limited to actions where the plaintiff has received some injury to his person, or some legal right has been invaded of a nature naturally to cause grief and distress of mind. None of the cases, as we read them, go beyond these limits. They are not recoverable in actions for death by the wrongful act of another. Hutchins v. St. Paul, M. & M. Ry. Co., 44 Minn. 5, 46 N. W. 79; Blake v. Midland Ry. Co., 18 Q. B. 93; Donaldson v. Mississippi, 18 Iowa, 280, 87 Am. Dec. 391; Munro v. Pacific Coast, 84

103 M.—4

Cal. 515, 24 Pac. 303, 18 Am. St. 248. Nor in actions for libeling the dead. Bradt v. New Nonpareil, 108 Iowa, 449, 79 N. W. 122, 45 L. R. A. 681; 25 Cyc. 426. Nor in actions for injuries to a minor child. Sperier v. Ott, 116 La. 1087, 41 South. 323, 7 L. R. A. (N. S.) 518, 114 Am. St. 587, and cases cited in note; Flemington v. Smithers, 2 Car. & P. 292; Bube v. Birmingham, 140 Ala. 276, 37 South. 285, 103 Am. St. 33; Black v. Carrollton, 10 La. An. 33, 63 Am. Dec. 586; County Commrs. v. Hamilton, 60 Md. 340, 45 Am. 739; Little Rock v. Barker, 33 Ark. 350, 34 Am. 44. In State v. Baltimore, 24 Md. 84, 87 Am. Dec. 600, an action by a mother for the wrongful death of her son in which she claimed the right to recover for mental anguish in addition to compensatory damages, the court said:

"According to the appellant's theory, the mother and son are supposed to live on together to an indefinite age; the one craving sympathy and support, the other rendering reverence, obedience, and protection. Such pictures of filial piety are inestimable moral examples, beautiful to contemplate; but the law has no standard by which to measure their loss."

Loss of support or loss of services is the gist of actions last referred to and compensatory damages only are recoverable, and it is immaterial whether the act complained of was wilful and malicious, or merely the result of negligence. There may be other exceptions to the general rule mentioned, as applied to actions ex delicto, but we are not concerned with them at this time.

It is also a rule of general application that mental anguish is not a proper element of damage in actions for breach of contract, though there is a class of wrongs arising out of contractual relations in which this element is permitted to enter. Illustrations of this are found in wilful and unlawful injuries to passengers upon railroad trains. There is in such cases a contract by the railroad company to carry safely the passenger to his destination, and an implied legal obligation to protect him within certain limits while the relation of passenger and carrier exists, and the courts declare that wilful or malicious violation of that duty constitutes an independent tort, for which recovery may be had for the indignity to which the passenger is subjected. Mykleby v. Chicago, St. P. M. & O. Ry. Co., 39 Minn. 54, 38 N. W. 763; Brown v. Chicago, 54 Wis. 342, 11 N. W. 356,

911, 41 Am. 41; Walsh v. Chicago, 42 Wis. 23, 24 Am. 376; Craker v. Chicago, 36 Wis. 657, 17 Am. 504.

An exception is also made of actions for breach of promise to marry. But such actions in all essential respects partake of the nature of torts, and are so treated by the courts. Johnson v. Travis, 33 Minn. 231, 22 N. W. 624; Thorn v. Knapp, 42 N. Y. 474, 1 Am. 561; Smith v. Woodfine, 87 E. C. L. 660; Coil v. Wallace, 24 N. J. L. 291; 5 Cyc. 1021.

The rule that damages of this nature may be recovered in an action for a breach of contract properly to send and deliver a telegram has become the settled law in a number of the states, following the lead of Texas. But a majority of the courts do not concur in that doctrine. 63 Cent. Law J. 340; 1 Am. & Eng. Ann. Cas. 355, note. This court declined to follow it in Francis v. Western Union Tel. Co., 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. 507, where the rule laid down in the leading English case of Hadley v. Baxendale, 9 Exch. 341, was approved and followed. But it would be unprofitable to prolong this opinion by an extended discussion of the general subject.

Summarizing, it may be said that mental anguish is a proper element of damages in all actions sounding in tort, where the plaintiff has received some physical injury, or his legal rights have been so wilfully invaded as naturally to cause mental distress. It is an element to be considered in actions for a breach of contract in exceptional cases only; the principal exception being the telegram cases already referred to. And we pass to a consideration of the question whether this case comes within any of the exceptions.

In respect to the wrongful interference with the rights of preservation and burial of the dead, the courts are again somewhat at variance. Though the common law recognizes no property in the bodies of deceased persons (Weld v. Walker, 130 Mass. 422, 39 Am. 465; Reg. v. Sharpe, 7 Cox, C. C. 214), a right of possession and preservation for burial purposes is conceded by nearly all the authorities, which the law will protect (Regina v. Fox, 2 Q. B. 246; Williams v. Williams, 20 Ch. Div. 659; Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. 370; 3 Am. & Eng. Ann. Cas. 132, note). And any wilful or wrongful interference with that

right by the intentional mutilation or secretion of the body subjects the wrongdoer to an action on the case, in the determination of which mental anguish is a proper element for consideration in assessing damages. The law on the subject, so far as it relates to actions in tort, is completely summed up by Mr. Justice Mitchell in Larson v. Chase, supra. It was said in that case:

"But this whole subject is only obscured and confused by discussing the question whether a corpse is property in the ordinary commercial sense, or whether it has any value as an article of traffic. The important fact is that the custodian of it has a legal right to its possession for the purposes of preservation and burial, and that any interference with that right by mutilating or otherwise disturbing the body is an actionable wrong."

That has become one of the leading cases on the subject in this country, and has been cited with approval and followed and applied in other states. Burney v. Children's Hospital, 169 Mass. 57, 58, 47 N. E. 401, 38 L. R. A. 413, 61 Am. St. 273; Koerber v. Patek, 123 Wis. 453, 102 N. W. 40, 68 L. R. A. 956; Foley v. Phelps (Sup.) 37 N. Y. Supp. 471; Hackett v. Hackett, 18 R. I. 155, 26 Atl. 42, 19 L. R. A. 558, 49 Am. St. 762; Louisville v. Wilson, 123 Ga. 62, 51 S. E. 24. The contrary doctrine is upheld by plausible argument in Long v. Chicago, 15 Okl. 512, 86 Pac. 289, 6 L. R. A. (N. S.) 883, in which the cases holding to the view that no action will lie in such cases, either in tort or for breach of contract, are cited.

The rule laid down in the Larson case expresses the modern view of the question, and extends a remedy where otherwise none would exist. There being no property in dead bodies, and the wrong complained of being only the invasion of an intangible legal right, no actual damages for the wrongful mutilation of the body can be recovered, and the courts award solatium for the bereavement of the next of kin as the only appropriate relief. Without the element of mental distress, the action would be impotent of results and of no significance or value as a remedy for the tortious violation of the legal right of possession and preservation. 7 Current Law, 954. But that rule can on principle have no application to actions for breach of contract. A breach of contract involves only such consequences as directly result therefrom and were within the contemplation of

the parties when the contract was made, and which may be measured and determined by some definite rule or standard of compensation.

While the rule of compensation to the injured party controls the measure of damages both in actions ex contractu and ex delicto, the elements proper to be considered are in some respects widely different in the two classes of cases. In actions sounding in tort, exemplary or punitive damages are as a general rule awarded, in the discretion of the jury. McCarthy v. Niskern, 22 Minn. 90; Peck v. Small, 35 Minn. 465, 29 N. W. 69; 12 Am. & Eng. Enc. (2d Ed.) 13. But they are compensatory in theory only. Such damages are not recoverable in actions for breach of contract, except, perhaps, in those exceptional cases where the breach amounts to an independent wilful tort, in which event they may be recovered under proper allegations of malice, wantonness, or oppression. 12 Am. & Eng. Enc. (2d Ed.) 20; North v. Johnson, 58 Minn. 242, 59 N. W. 1012. They cannot be recovered in actions involving ordinary negligence, where no physical injury results. Louisville v. Shanks, 94 Ind. 598; Chicago v. Scurr, 59 Miss. 456, 42 Am. 373; Gibney v. Lewis, 68 Conn. 392, 36 Atl. 799; Milwaukee & St. P. Ry. Co. v. Arms, 91 U. S. 489, 23 L. Ed. 374; City of Chicago v. Martin, 49 Ill. 241, 95 Am. Dec. 590. Exemplary damages are incapable of definite ascertainment; and, though classed theoretically as compensatory, they are, in fact, imposed in the nature of punishment for the wrong complained of, and the amount rests in the sound judgment of the jury. Mental grief from a pecuniary standpoint is just as incapable of definite calculation as exemplary damages. The law furnishes no standard by which it may be valued, the amount awarded in any particular case must necessarily rest in the discretion of the jury, and recovery therefor should on principle be confined to those cases where punitive damages are allowed. In Texas, Kentucky, North Carolina, and perhaps other states, where the so-called "Texas doctrine" in the telegraph cases has met with approval, it is held that in an action for breach of contract concerning the burial of the dead mental anguish may properly be considered by the jury in the assessment of damages to the aggrieved party. Louisville v. Hull, 113 Ky. 561, 68 S. W. 433, 57 L. R. A. 771; Hale v. Bonner, 82 Tex. 33, 17 S. W. 605, 14 L. R. A. 336, 27 Am. St. 850; Renihan v. Wright, 125 Ind.

536, 25 N. E. 822, 9 L. R. A. 514, 21 Am. St. 170. Those cases follow logically the Texas rule in the telegraph cases. But, wherever the Texas rule has been repudiated as an innovation upon elementary principles of the common law, the courts have, in our view, consistently reached the opposite conclusion. The cases are collected and the subject discussed in 5 Columbia Law Rev. 179, and in 1 Am. & Eng. Ann. Cas. 355.

The extreme to which this rule leads is illustrated in two North Carolina cases. A father sent a telegram to a friend at a distant point stating that his daughter, sixteen years of age, was on her way to visit at his home, and requesting the friend to meet her at the train, which arrived about twelve o'clock at night. Through the negligence of the company's agent, the message was not delivered, and no one met the daughter upon her arrival at the station. The conductor of the train placed her in charge of an employee of the railroad company, who procured a carriage, and she was taken to the friend's house, safe and sound, except for her mental anguish and worry. She brought an action for damages against the telegraph company, alleging as ground of recovery her mental distress. The father also sued for mental anguish which he suffered when told the next day of the failure to deliver the telegram. The court sustained the right of action in each case. Green v. Telegraph Co., 136 N. C. 489, 49 S. E. 165, 6 L. R. A. 985, 103 Am. St. 955; Green v. Telegraph Co., 136 N. C. 506, 49 S. E. 171. These cases are not open to criticism, except to the extent the doctrine upon which they are founded is subject to adverse comment. They follow logically and consistently the "Texas doctrine" and emphasize, in our opinion, the reductio ad absurdum of that rule.

Efforts have been made to induce the courts of some jurisdictions to apply that doctrine in various forms of action for breach of contract. In Eller v. Carolina, 140 N. C. 140, 52 S. E. 305, 3 L. R. A. (N. S.) 225, damages were sought for mental anguish for the breach of a contract to furnish a wedding trousseau, by reason of which plaintiff was subjected to mortification, humiliation, and mental distress. The court rejected the claim. Damages were sought in Kansas City v. Dalton, 65 Kan. 661, 70 Pac. 645, for negligently carrying plaintiff by the station of his destination, but the court held that

distress of mind was not subject of compensation for a breach of contract of that nature. See also Wilcox v. Richmond & D. Co., 52 Fed. 264, 3 C. C. A. 73, 17 L. R. A. 804; Hot Springs v. Deloney, 65 Ark. 177, 45 S. W. 351, 67 Am. St. 913.

But, without further citation of authorities or discussion of the subject from the standpoint of decisions of other courts, we turn to our own decisions, and find that the question has been definitely settled by this court in Francis v. Western Union Tel. Co., 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. 507, wherein we declined to follow the Texas rule. The question was fully considered in that case, and the conclusion reached that in actions for breach of contract to transmit and deliver a telegram mental anguish occasioned by the breach furnished no proper basis for the recovery of damages. The difference between actions in tort, and those for breach of contract is pointed out with clearness by Mr. Justice Mitchell, who wrote the opinion. The rule therein announced and applied has the sanction of the elementary principles of the law of damages, and is approved by a majority of the courts of this country. In addition to the cases heretofore referred to, we cite Chapman v. Western Union, 88 Ga. 763, 15 S. E. 901, 17 L. R. A. 430, 30 Am. St. 183; Western Union v. Rogers, 68 Miss. 748, 9 South. 823, 13 L. R. A. 859, 24 Am. St. 300; Connell v. Western Union, 116 Mo. 34, 22 S. W. 345, 20 L. R. A. 172, 38 Am. St. 575. "The law looks," Judge Mitchell remarked, "only to the pecuniary value of a contract, and for its breach awards only pecuniary damages." And the court applied the general rule that in such actions damages must be limited to the actual pecuniary loss naturally and necessarily flowing from the breach.

The logic of that decision applies to the case at bar. The complaint before us charges, at most, a negligent failure to perform the contract, for the breach of which damages for mental anguish are demanded, and the case is not brought within those wherein such damages are awarded for the malicious and wanton breach, to which we have adverted. 13 Cyc. 44–45. Of this class Lindh v. Great Northern Ry. Co., 99 Minn. 408, 109 N. W. 823, 7 L. R. A. (N. S.) 1018, is an example. In that case we did not intend to be understood as holding that mental anguish was a proper element of damages in

an action for the failure of a common carrier safely to transport a corpse to its destination in accordance with its contract. The injuries there complained of were treated as a wilful tort distinct from the contract, and the conclusion reached is in harmony with Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. 370. If damages for mental anguish may not be recovered in actions wholly in tort, where the parent suffers untold grief at the disfigurement of his minor child, or because of his death by the wrongful act of another, or in actions for libeling the dead, as indicated by the authorities cited, by what course of reasoning, from the view point of legal principles uninfluenced by feelings of sentiment or resentment, can it be held that they may be recovered, in an action like that at bar, for the mere negligence of a railroad company in carrying a corpse beyond the station of its destination, resulting in no injury to the body, save such as arises from its natural tendency to decomposition? We discover none.

It is urged that damages of this character in actions upon contract, as well as in tort, find support in the declaration of the fundamental law that there shall be a certain remedy for all wrongs, and that, if they be denied in breach of contract actions, the guaranteed remedy is denied. This is plausible, but not persuasive. The maxim, "ubi jus ibi remedium," has, like other principles of the law, its limitations. The guaranty of a remedy for all wrongs has more particular reference to wrongs of a substantial nature, where property or character is affected, rather than to those founded wholly in sentiment. It protects property and property rights, persons, domestic relations, character, and reputation, but not necessarily grief and mental distress occasioned by some unintentional act of wrongdoing. As remarked by the supreme court of Indiana in Western Union v. Ferguson, 157 Ind. 64, 69, 60 N. E. 674, 1080, 54 L. R. A. 846, the maxim that for every wrong there should be a remedy, as applied to actions for damages for breach of contract, was intended by the "fathers of the common law" to include such damages as the "courts dealing practically with the practical affairs of life, can find to be certain and measurable from evidence the source of which is open to both parties, and the nature not transcendental." Other instances where the common law has not afforded a remedy in apparently

meritorious cases are numerous, chief among which is the remedy for death by wrongful act first given in England by Lord Campbell's act, and followed by statutory enactments in this country. Without a statute providing a remedy in that class of wrongs, no action could be maintained by the relatives of the deceased for compensatory or other damages. So, in cases like that at bar, the remedy should come from legislation, and not by judicial decisions out of harmony with established principles of the law. Western Union v. Ferguson, supra.

For these reasons, we conclude that plaintiff is not entitled to recover for her mental anguish. Her complaint, however, charges a breach of contract, and she would be entitled at least to nominal damages, and the court below properly overruled the demurrer.

Order affirmed.

JAGGARD, J. (dissenting).

I am unable to agree with the real major premise of the majority opinion, which concerns the distinction between actions on the contract and in tort. According to that opinion, "the difference between actions in tort and those for breach of contract is pointed out with clearness" in Francis v. Western Union Tel. Co., 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. 507. In the passage referred to Judge Mitchell said: "This action is not one of tort, but on contract; its gist and gravamen being the breach of the contract, the duties and obligations growing out of which are regulated by the statute, which itself becomes a part of it. The best test of this is the fact that such an action could not be maintained without pleading and proving the contract." This amounts to defining a tort as a wrong independent of contract. The fallacy of that definition has been clearly and repeatedly demonstrated. It is elementary that the distinction between contracts and torts is not philosophical, but historical, and largely concerns the law adjective. Mr. Pollock accordingly defines a tort as "an act or omission giving rise in virtue of the common-law jurisdiction of the court to a civil remedy which is not an action of contract." Pollock, Torts, 4.

In point of actual number, nine-tenths of the actions ex delicto heard by this court, and by most courts, involve causes of action

"which could not be maintained without pleading and proving the contract." Most of them are in trespass on the case, and are brought for the violation of a contract duty or for a violation of a duty imposed by the common law or statute upon relations entered into by contract. The bulk of these are actions for negligence, arising for example between carriers and patrons, masters and servants. Actions of fraud in connection with a contract constitute another large group. There are also miscellaneous actions in which it is held that the action ex delicto may lie upon a state of facts of which a contract is a necessary part, although no injury to the person, nor impact upon property, nor damage consequent on fraud, is involved. This will be found especially clearly set forth in Rich v. New York, 87 N. Y. 382. It is not material whether this great branch of the law be called the law of quasi torts, as distinguished from other torts, or of impure as distinguished from pure torts. The use of the term "independent tort" in the majority opinion is, in so far as I know, peculiar to itself.

It would seem a work of supererogation to cite in support of these views more than a few of the vast multitude of authorities sustaining them. The familiar principle is laid down in 1 Chitty, Pl. 135—which has been approved times without number—that, "if a common-law duty result from the facts, the party may be sued in tort for any negligence or misfeasance in the execution of the contract." In the leading case of Boorman v. Brown, 3 Q. B. 511, Tindal, C. J., said:

"That there is a large class of cases in which the foundation of the action springs out of privity of contract between the parties, but in which, nevertheless, the remedy for the breach or nonperformance is indifferently either assumpsit or case upon tort, is not disputed. Such are actions against attorneys, surgeons, and other professional men. * * * Actions against common carriers, against shipowners on bills of lading, against bailees of different descriptions, and numerous other instances occur in which the action brought in tort or contract, at the election of the plaintiff * * * The principle in all these cases would seem to be that the contract creates a duty, and the neglect to perform that duty, or the nonfeasance, is a ground of action upon a tort."

See also Green v. Greenback, 2 Charles Marshall, 485; Pozzi v. Shipton, 8 Ad. & El. 963; Courtenay v. Earle, 10 C. B. 73; Legge v. Tucker, 1 H. & N. 500; Tattan v. Great Western, 2 El. & El. 844; Pontifex v. Midland, L. R. 3 Q. B. 23; Bryant v. Herbert, L. R. 3 C. P. D. 389; Fleming v. Manchester, L. R. 4 Q. B. Div. 81; Cohen v. Foster, 66 Law Times (N. S.) 616. All these cases are in 2 Ames & Smith's Lead. Cases on Torts at pages 719–742.

2. Nor am I able to agree with the minor premise of the majority opinion that "plaintiff's complaint charges a breach of contract only," and that, therefore, the rule of damage applicable to cases of tort may not be invoked. I think that complaint charges a violation of a duty imposed by common law upon a relation which was entered into by contract and constitutes a cause of action in form ex delicto. So far as the allegations of the particular complaint are concerned, there can be, and, as I understand, there is, no doubt that it contains all necessary allegations to set forth a cause of action ex delicto, if such a thing may be. The present question is not the form of the complaint, but whether plaintiff has a right to sue ex delicto on the facts therein stated.

It is elementary that, for breach of any duty imposed by law, the person making the contract with the carrier may sue ex contractu or ex delicto for the violation of the duty. From the great number of cases on the subject, reference is made to Bank of Orange v. Brown, 3 Wend. (N. Y.) 158; Baltimore v. Kemp, 61 Md. 619, 48 Am. 134; Wood v. Milwaukee, 32 Wis. 398; Sheldon v. S. S. Uncle Sam, 18 Cal. 527, 79 Am. Dec. 193. And see Boorman v. Brown, supra. It is clear that an ordinary action to recover from a common carrier damages for personal injury by its negligence "is in substance not an action of contract but an action of tort against the company as carriers." Mr. Justice Williams in Marshall v. New York, 11 Com. Bench, 655, 658. In that case Jervis, C. J., said: "But upon what principle does the action lie at the suit of the servant for his personal suffering? Not by reason of any contract between him and the company, but by reason of a duty implied by law to carry him safely." The duty to carry safely is a part, and a part only, of the general duty imposed upon carriers by the law in the discharge of

their public calling and in accordance with public arrangements. Exactly the same reasoning which entitles a proper party to sue in tort for negligent breach of the duty to carry safely either passengers or freight entitles him to so sue for failure to perform other allied duties. It is settled by reason and authority beyond any possibility of controversy that a carrier is bound by law to receive for proper consideration freight or passengers, and to carry them safely to their respective destinations, and to afford reasonable time and facilities for getting on and putting aboard, and departing from or removing from the train, respectively. When sued for any violation of that general duty the action may be in form ex delicto or ex contractu at the option of the plaintiff. In an action ex delicto, the allegation of the contract is mere matter of inducement. Its purpose is to show that the passenger was rightfully on the train. See New Orleans v. Hurst, 36 Miss. 660, 668, 74 Am. Dec. 785. The courts incline to resolve all doubts as to the form of the action in favor of the action in tort. See 2 Wood, Railroads, § 296, p. 1197, and post.

One essential difference resulting from the exercise of the option to sue ex delicto is that a larger measure of damages is applied to such actions than to actions ex contractu. See Murdock v. Boston, 133 Mass, 15, 43 Am. Dec. 480, and post. To be more specific, "the invitation to alight" cases (See Webb, Pollock, Torts, 559; 9 Cent. Dig. Carriers, § 1072, et seq.), the "overshooting station" cases (2 Wood, Railroads, § 312, pp. 1353–1363), involve torts. To be still more specific, an action to recover damages for failure to stop for a passenger or to carry him to his destination and to enable him to alight there is a violation of a public duty, and gives rise to a cause of action in tort. Exemplary damages have been awarded in such cases, although no "independent tort" is shown. For failure to stop at the station for the passenger, see Heirn v. McCaughan, 32 Miss. 17, 39, 66 Am. Dec. 588, 592; Purcell v. Richmond, 108 N. C. 414, 12 S. E. 954, 956, 12 L. R. A. 113 (and see notes); Illinois v. Siddons, 53 Ill. App. 607 (in which damages for mental anguish were allowed). For failure to stop at destination and for carrying beyond, see New Orleans v. Hurst, supra; Alabama v. Sellers, 93 Ala. 9, 9 South. 375, 30 Am. St. 17; Carter v. Illinois Central (Ky.) 34 S. W. 907. That

a passenger may recover damages in an action of tort for failure to stop a train at a given station on allegation of a negligent wrong, as distinguished from a wilful wrong, is particularly well set forth in Alabama v. Hanes, 69 Miss. 160, 13 South. 246.

The general theory as to the form of action involved is well stated by Handy, J., in Heirn v. McCaughan, 32 Miss. 17, 39, 66 Am. Dec. 588, 592. The action in that case sought to recover damages for the failure of a common carrier to stop at a certain place and take passengers in accordance with its special advertisement, because, inter alia, of the requirements of the mail service. The court said, in part:

"The character of the action must be determined by the nature of the grievance, rather than by the form of the declaration; but in this case they both indicate that the action is founded on the violation of a general duty, and not on a breach of a special contract. And, whenever the action, in cases of this kind, is against a common carrier, the courts are inclined to consider it as founded in tort, unless a special contract be very clearly shown by the declaration. Collyer, Part. §§ 735, 736, 738; Ansell v. Waterhouse, 6 M. & S. 385; Pozzi v. Shipton, 8 A. & E. 963. It is manifest, therefore, that this action must be regarded as in the nature of an action on the case for the violation of the duty of the company arising from their engagements to the public. In such cases the carriers are bound by the rules of the common law to perform the work tendered them, and no consideration other than the general legal obligation resting upon them from the nature of their business need be shown by a party who has been injured by their acts of omission or commission, whether negligent, fraudulent, or deceitful. Story on Bail. §§ 508, 591; Philadelphia and Reading Railroad Company v. Derby, 14 How. U. S. R. 486. Their business as common carriers charges them with duties to the public, which, when violated, entitle the parties aggrieved to an action for the tort which is wholly distinct from a matter of individual contract."

This subject and the measure of damages in tort and contract, respectively, is considered with especial clearness in Brown v. Chicago, 54 Wis. 342, 11 N. W. 356, 911, 41 Am. 41. The complaint sought a recovery for sickness and bodily and mental suffering of the plaintiff

wife, and for mental suffering and expense and trouble on the part of the plaintiff husband growing out of the sickness of the wife alleged to have been caused by the negligence of the defendant's servants in directing plaintiffs to leave a train of passenger cars before they had reached their destination. The complaint charged that the defendant wholly neglected his duty in the premises. Taylor, J., said:

"We see no reason for distinguishing this case from the class of cases which hold a railway company liable in tort for an injury done to a passenger while traveling on a train caused by collision, the breaking down of a bridge, or any defect in the road or cars. All these matters are a breach of the contract to carry the passenger safely, yet the carrier is held liable in an action of tort for any injury sustained, based upon the allegation that it was incurred through the carelessness and negligence of the company. All the cases hold that the person injured * * * may proceed either upon contract, alleging the careless or negligent acts of the defendant as a breach of the contract, or he may proceed in tort, making the carelessness and negligence of the company the ground of his right of recovery; and, if he proceed for the tort, it becomes necessary on the part of the plaintiff to show that he stands in the relation of a passenger of the carrier, in order to show his right to recover damages for the negligence of the carrier in not discharging his duty in carrying him safely. Where the relation of passenger and carrier exists, the law fixes the duty of the carrier towards the passenger, and any violation of that duty is a wrong; and, if injury occurs to the passenger from such wrong, then the carrier is responsible, and must make good the damage resulting therefrom. Wood v. Railway Co., 32 Wis. 398; Walsh v. Railway Co., 42 Wis. 23; Craker v. Railway Co., 36 Wis. 657, 675, and cases cited. In this case we deem it material to determine whether the action is an action for a tort, or an action for a breach of the contract to carry the plaintiffs to their destination, because we think the rules of damages in the two actions are essentially different. We hold that the action in this case is based upon the tort of the defendant in negligently and carelessly directing the plaintiffs to leave the cars before they reached their destination."

After stating the rule of damages which may be recovered in actions for a breach of contract as set forth in the case of Hadley v. Baxendale, 9 Exch. 341, and after reviewing and citing many cases, the court points out that the substance of the distinction is this: "While the rule in actions for breach of contract is that the damages recoverable are only such as the parties may reasonably be supposed to have contemplated as likely to result from such a breach, the general rule in actions for torts is that the wrongdoer is liable for all injuries resulting directly from the wrongful act, whether they could or could not have been foreseen by him." And see Alabama v. Hanes, supra. The later course of opinion in Wisconsin is not material here, in view of the decisions in this state.

That this court had adopted the rule in Hadley v. Baxendale, supra, in contract cases (for example, see Paine v. Sherwood, 21 Minn. 225); and the larger measure of recovery in tort cases is clear beyond controversy. See for example, Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640. It is equally certain that it has applied the tort measure of damages to cases in which a passenger was not carried to his destination by the negligence of the company, and in which there was no independent tort committed by the master. Schumaker v. St. Paul & Duluth R. Co., 46 Minn. 39, 48 N. W. 559, 12 L. R. A. 257.

3. I am unable to agree with the conclusion of the majority opinion that damages for mental anguish cannot be recovered in the present action. The gist of the previous discussion is not the academical one as to the mere form of action, but the practical one as to the measure of damages. Of course, the mere fact that the present action sounds in tort does not necessarily entitle plaintiff to recover damages for mental anguish. In some actions ex delicto such damages are awarded; in others they are denied. Their allowance or denial depends upon considerations peculiar to the particular action then under consideration, and not upon any general principle applying indifferently to all or most torts, except the obviously proper general disinclination to allow their assessment. The status of a dead body, it is familiar, is anomalous. It is neither a living passenger nor freight. None the less it is within the protection of the law. The

carrier undertaking to ship it owes a duty for the violation of which its custodian may recover damages in an action in tort. There is no controversy as to these propositions. Whether or not the law recognizes a "kind of quasi property" in dead bodies we need not stop to inquire. The only question here is whether that violation must be wilful or may be negligent. To my mind it follows from the previous discussion, from principle and from authority, that a cause of action in tort is here made out, justifying the recovery of sentimental damages, although the wrong is shown to have been merely negligent.

All pertinent analogies of the law unite in not requiring that the carrier should have done intentional wrong. Authorities as to exemplary damages seem to me out of place. No exemplary damages are here sought. Sentimental damages awarded for violation of a custodian's right in the dead body are primarily not vindictive, but compensatory. Take two cases: Assume that in one case a dead body is injured by negligence only; there the award of compensatory damages would be the natural injury to the feelings. Assume that in another case the dead body has not only been negligently exposed, but has been the subject of indignity and outrage, as by the intentional deposit of filth upon it; there an enlarged measure of recovery in the nature of exemplary damages might be permitted in strict accordance with usual principles. Wilfulness is not a necessary part of the ordinary action on the case to recover damages for breach of duty by a common carrier. No reason suggests itself for making this class of cases an exception. Why should negligence be sufficient basis for an action in tort as to ordinary passengers and as to freight, and not as to a corpse? If a wreck had been caused by admitted negligence, for example, in misplacing a switch, and thereby living passengers, a corpse, and cattle were mutilated, why should not substantial damages be recoverable in each case? If in such wreck perishable fruit, or cattle killed by the accident, or a corpse, should by virtue of negligence in subsequent unreasonable delay become decomposed, why should not compensation be recoverable in each case? It shocks reason and the sense of propriety alike to hold that the dead body should not have the same protection as perishable fruit or dead cattle. "It would be discreditable to any system of law[s] not to provide some remedy in such a case." Mr. Justice Elliott in 16 Cent. Law J.

161, 163. That in other cases where there is a wrong the law has refused a remedy has no bearing on this class of cases in which the law has expressly provided a remedy, viz., the award of sentimental damages. To permit such a remedy is not judicial legislation but the, application of admitted principles to a particular state of facts.

The discussion of the Texas doctrine as to sentimental damages is irrelevant, inasmuch as the only reason for allowing sentimental damages here is the fact that they are the only adequate damages appropriate. To permit their recovery in this case has no bearing on the ordinary cases in which other compensatory damages may be allowed. The converse of this proposition is equally true. The justice and cogency of the familiar and current objections to the award of such damages is as clear as the propriety of refusing in any wise to relax the rules which forbid their allowance. But to overrule the demurrer in this case involves neither an extension of the present law nor any modification of the principles set forth in the group of cases, of which Francis v. Western Union Tel. Co., 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. 507, is the leading one in this state.

The more nearly specific authorities appear to me to accord with this view. How complete an innovation is the requirement of wilfulness as an essential to the right to recover damages under such circumstances will appear from an examination of the authorities stated and discussed at length in Louisville v. Wilson, 123 Ga. 62, 51 S. E. 24. And see Medical College v. Rushing, 1 Ga. App. 468, 57 S. E. 1083. The whole reasoning of Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. 370, and the many cases which approve it, accord with this conclusion. To my mind that decision holds that the courts recognize and protect the right to preserve the corpse and to bury it, and that any violation of that right will give rise to an action for damages. See 8 Am. & Eng. Enc. (2d Ed.) 835, note 1; 13 Cyc. 280, 281. Lindh v. Great Northern Ry. Co., 99 Minn. 408, 109 N. W. 823, 7 L. R. A. (N. S.) 1018, is, as I view it, directly in point. It is true that the exposure of a dead body to rain was in that case alleged to have been negligent, and also wilful. The opinion does not attempt to distinguish between negligence and wil-

fulness as a basis for the right to recover. The cause of action of the plaintiff was distinctly held to have been not on the contract, but in tort.

Under the circumstances here presented, it is unnecessary to consider whether some of the damages alleged in the complaint were or were not remote.