WREN et al. v. TEXAS & P. RY. CO.

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 3, 1912.)

CARRIERS (§ 174*) — TRANSPORTATION OF CORPSE—LIABILITY OF CARRIER.

Plaintiff, shipping the corpse of his father under the law applicable to the transportation of passengers, cannot rely on Sayles' Ann. Civ. St. 1897, art. 331a, defining connecting carriers of property, and he cannot demand the transfer of the corpse by the initial carrier to the connecting carrier without tendering the transfer ticket which he holds.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 174.*]

Appeal from District Court, Midland County; S. J. Isaacks, Judge.

Action by S. A. Wren and another against the Texas & Pacific Railway Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

Caldwell & Whitaker and Ben L. Cox, for appellants. Douthit & Smith, for appellee.

DUNKLIN, J. This suit was instituted by S. A. Wren and G. A. Wren against the Texas & Pacific Railway Company to recover damages for alleged negligent delay in the shipment of the remains of their deceased father from Midland, Tex., to Munday, Tex., and from a judgment in favor of the defendant, the plaintiffs have appealed.

The shipment was via the Texas & Pacific Railway from Midland to Abilene, and thence to Munday over the Wichita Valley Railway. It was alleged that if defendant had delivered the body promptly to the Wichita Valley Railway Company after its arrival in Abilene, as it was appellee's duty to do, the same would have reached Munday in time for its interment as planned by plaintiffs, but that defendant negligently failed to discharge this duty, and in consequence of the delay thus caused the body was transported over a later train, thus delaying the burial 24 hours beyond the time appointed therefor. The trial was without the intervention of a jury, and the judge trying the same filed findings of fact and conclusions of law as follows:

Findings of Fact.

(1) "The plaintiff S. A. Wren was a son of the deceased R. H. Wren, whose remains were shipped by the plaintiff over the line of the defendant, the Texas & Pacific Railway Company, the Wall Transfer Company, and the Wichita Valley Railway Company from Midland to Munday, Tex."

(2) "On the 4th day of February, 1910, the plaintiff delivered to the defendant, the Texas & Pacific Railway Company, the remains of his father, R. H. Wren, who had died in Midland, Tex., on the day previous; said remains, at the time of delivery to the said railway company, being embalmed and otherwise prepared for shipment in all things as required by law and the rules of the defendant."

(3) "For the transportation of said remains, the defendant, the Texas & Pacific Railway Company, sold to the plaintiff two tickets, known as 'coupon tickets,' one for the transportation of said corpse, and the other for the transportation of the plaintiff, who was designated by the rules of the company, and also by the rules of the Texas state board of health, as the person or passenger in charge; plaintiff paying $6.70 for each of the tickets."

(4) "Each of the tickets sold were delivered to the plaintiff S. A. Wren, and each of said tickets had a coupon, the first for transportation from Midland to Abilene over the line of the Texas & Pacific Railway Company, the second over the line of the Wall Transfer Company from the Texas & Pacific Railway Company's depot at Abilene to the Wichita Valley Railway Company from Abilene, Tex., to Munday, Tex."

(5) "I find that the defendant, the Texas & Pacific Railway Company, would not have undertaken to have transported the remains of R. H. Wren, father of plaintiff, on a passenger ticket without at the same time selling to the plaintiff, or some one in charge of said remains, a like ticket for their own transportation, or without some one going on the same train as the remains of the deceased, as a person in charge."

(6) "The defendant, the Texas & Pacific Railway Company, transported the remains of the said R. H. Wren from Midland, Tex., to Abilene, Tex., in a proper manner, and there unloaded same upon its tracks at its depot in Abilene, and within a short while after so unloading pushed the trucks on which the coffin and box containing the remains was loaded into the baggageroom of their depot, where it remained until some time the next day, at which time it was transported by the Wall Transfer Company to the Wichita Valley Railway Company, and, after presentation by the plaintiff of

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

the ticket, known as the 'corpse ticket,' purchased by the plaintiff from the defendant, the Texas & Pacific Railway Company, at Midland, loaded said remains on their train and transported same to Munday, the final destination; said train leaving Abilene late in the evening of February."

(7) "The first train leaving Abilene over the line of the Wichita Valley Railway Company after the arrival of the Texas & Pacific train conveying the remains was early in the morning of February 5th, and it was on this train that the remains should have been carried to Munday, Tex."

(8) "The plaintiff and his brother, also a son of deceased, rode upon the same train of defendant company that carried the remains from Midland to Abilene, and upon the arrival of said train at Abilene alighted from same, and plaintiff went forward to where baggage was being unloaded from said train, and there was the box containing the remains unloaded upon a track, and saw the employés of the defendant draw or push said truck around the Texas & Pacific Company's depot, and plaintiff then, without further attention to the remains of his father, went with his brother, who was a cripple, on the line of the Wall Transfer Company to a hotel on the south side of Abilene."

(9) "Plaintiff, after having gone to the hotel in Abilene, before going to bed, went to the Wichita Valley Railway Company depot in Abilene, and found same dark, and waited a while, looking for the corpse of his father to arrive. After remaining a short while, and corpse not having arrived, he went to his hotel and went to bed and to sleep. Plaintiff and his brother arose next morning just in time to catch the Wichita Valley train, and went from the hotel where they were stopping to the Wichita Valley depot and immediately boarded the train. Plaintiff, not seeing anything of the corpse, got off the train, made inquiries, and found that it had not been delivered to the Wichita Valley Railway Company. His brother, who was a cripple, remained on the train and went to Munday. Plaintiff remained in Abilene until next train going north on the Wichita Valley Railway Company's line, and made inquiries concerning the corpse of his father, which he found at the Texas & Pacific depot."

(11) "The employés of the Texas & Pacific Railway Company at this time (the next morning after the Wichita Valley train had gone) refused to turn the corpse over to the plaintiff until he had produced the coupon from the corpse ticket belonging to the Wall Transfer Company."

(12) "After some delay and explanations, the Wall Transfer Company carried the corpse to the Wichita Valley depot, and delivered the same to the Wichita Valley Railway Company."

(13) "Arrangements had been made by plaintiff to bury the corpse at Munday immediately on the arrival of the train that left Abilene the foregoing morning."

(14) "After plaintiff discovered that the corpse would not go on that train, and was still in the depot of the Texas & Pacific Railway Company, he suffered mental anguish to the extent that, if he was legally entitled to recover, he would be entitled to damage in the sum of $200."

### Conclusions of Law.

"By the sale of the corpse ticket and the passenger in charge ticket by the defendant, and the purchase of same by the plaintiff, the defendant entered into a contract with plaintiff, whereby it agreed to transport the plaintiff and the corpse from Midland, Tex., to Munday, Tex., over its own line and the line of the Wall Transfer Company and the line of the Wichita Valley Railway Company, in the same manner and the same way as it would have transported an ordinary passenger, further than that the corpse would go in the baggage car, instead of in a coach. And under said contract it was the duty of the plaintiff to look after and see to the loading of the corpse on the defendant's train at Midland, Tex., and to the unloading of it at Abilene, Tex., and to the loading of it upon the transfer of the Wall Transfer Company at Abilene, Tex., and the unloading of it at the depot of the Wichita Valley Railway Company at Abilene, Tex., and to the loading of it upon the car of the Wichita Valley Railway Company at Abilene, Tex., and to present to the conductor in charge of the defendant's train at Midland, Tex., the coupon of his ticket and the corpse ticket, and to present to the employés of the Wall Transfer Company at Abilene, Tex., the coupon of the corpse ticket and his ticket, and to present to the employés of the Wichita Valley Railway Company at Abilene, Tex., the coupon of the corpse ticket and of his ticket belonging to that railway company; and that as plaintiff failed to so look after the loading and unloading of said corpse, and failed to present the coupons to the different transportation companies, the delay in transportation of the corpse that occurred at Abilene, Tex., was due to his own negligence, and not to the negligence of the company; and therefore he ought not to recover, and judgment is rendered accordingly."

The evidence shows conclusively that plaintiffs purchased of defendant three passenger tickets, instead of two, one for the transportation of the corpse and two for the transportation of themselves, both of whom accompanied the body. With this addition, the findings of fact by the trial judge are supported by the evidence, and we approve and adopt the same, together with the conclusions of law, as a part of our opinion.

Appellants insist that the duty of the defendant, relative to the shipment of the body,

is fixed by article 331a, Sayles' Civil Statutes, reading: "All common carriers over whose transportation lines, or parts thereof, any freight, baggage or other property received by either of such carriers for through shipment or transportation by such carriers between the points in this state on a contract for through carriage recognized, acquiesced in or acted upon by such carriers shall, in this state, with respect to the undertaking and matter of such transportation, be considered and construed to be connecting lines, and be deemed and held to be agents of each other, each the agent of the others, and all the others the agents of each, and shall be deemed and held to be under a contract with each other and with the shipper, owner and consignee of such property for the safe and speedy through transportation thereof from point of shipment to destination; and such contract as to the shipper, owner or consignee of such property shall be deemed and held to be the contract of each of such common carriers; and in any of the courts of this state any through bill of lading, way-bill, receipt, check or other instrument issued by either of such carriers, or other proof showing that either of them has received such freight, baggage or other property for such through shipment or transportation, shall constitute prima facie evidence of the subsistence of the relations, duties and liabilities of such carriers as herein defined and prescribed, notwithstanding any stipulations or attempted stipulations to the contrary by such carriers, or either of them."

To sustain that contention, it would be necessary to hold that the body was some character of property which belonged to appellants. It seems that the common law recognizes no property in the body of a deceased person; yet many authorities hold that a corpse is quasi property of the family of the deceased. For an interesting discussion of that question and a citation of numerous decisions, see L. & N. R. Co. v. Wilson, 123 Ga. 62, 51 S. E. 24, 3 Ann. Cas. 128; Beaulieu v. G. N. Ry., 103 Minn. 47, 114 N. W. 353, 19 L. R. A. (N. S.) 564, 14 Ann. Cas. 462. It is unnecessary to determine the question whether or not the body was property, within the meaning of the statute quoted. For, even if the statute should be held to apply, ordinarily the fact is that the shipment was not made under or by virtue of its provisions. Appellants saw fit to ship the body under the law applicable to the transportation of passengers, which imposed upon the carrier a higher degree of care than applies in the transportation of freight, and there is no law which would necessarily impose a different contract, less burdensome to the railway company. A passenger must present himself to the carrier for transportation with a proper ticket entitling him thereto, before he can complain of a refusal of the carrier to transport him. Appellants could not have demanded transportation of themselves from defendant's depot at Midland to the depot of the Wichita Valley Railway without presenting tickets good with the transfer company, or money with which to pay the charges therefor. For the same reason, they could not, under their contract with the defendant for the shipment of the body, demand that the corpse be transferred without tendering the transfer ticket which they held, whether or not they were guilty of negligence in failing to do so.

We have found no error in the record, and the judgment is affirmed.