**Don R. SALTOU, et al., Appellants,**

v.

**DEPENDABLE INSURANCE CO., INC., et al., Richard L. Thissen, d.b.a. Thissen Insurance Agency, Patrick D. Champion, Respondents.**

No. C6-86-341.

Court of Appeals of Minnesota.

Oct. 21, 1986.

**630**

William L. French, Rochester, for Saltou, et al.

Peter C. Sandberg, Rochester, for Dependable Ins. Co.

Richard L. Thissen, pro se.

M. John Steward, Rochester, for Champion.

Heard, considered and decided by HUSPENI, P.J., and PARKER and RANDALL, JJ.

## OPINION

RANDALL, Judge.

In March 1984, appellants, Don Saltou and Barbara Hoppner, sued their insurer, Dependable Insurance Company, its agents, Richard L. Thissen d/b/a Thissen Insurance Agency, and Patrick D. Champion, for compensatory and punitive damages for respondents' failure to pay a claim. Appellants alleged intentional infliction of emotional distress, fraud and unfair and discriminatory insurance practices. Respondents moved for summary judgment. Bjornson General Agency was later added as a defendant, and Dependable's counsel moved for summary judgment on Bjornson's behalf.

Appellants moved to compel discovery, but dropped the motion, which was subsequently renewed and argued before the trial court. The trial court did not rule on appellants' motion to compel discovery.

On November 29, 1985, the Olmsted County District Court, granted respondents' motion for partial summary judgment. The trial was indefinitely continued due to illness of the trial judge.

Saltou and Hoppner appealed the entry of partial summary judgment on the issues of intentional infliction of emotional distress and fraud.

We affirm.

## FACTS

Appellant Don Saltou is a navy veteran who suffers from a service-connected nervous condition which renders him seventy percent disabled. He entered into a contract for deed with Merit Investment Company to purchase a mobile home for $12,500. Appellant planned to live in the mobile home with Barbara Hoppner, who is mentally retarded, dyslexic, and epileptic. Saltou and Hoppner eventually planned to marry.

In May 1983, shortly after Saltou purchased the mobile home, he purchased insurance on the mobile home and its contents from respondent Patrick Champion, a licensed insurance agent employed by respondent Thissen Agency. The policy contained an "additional living expenses" clause which compensated for living expenses incurred if an insured's mobile home is damaged or destroyed by fire. Hoppner, who owned some of the mobile home's contents, was not included as a named insured and her property was not listed on the policy, allegedly because Champion explained to appellants that once they were married, Hoppner would automatically become an additional insured.

In October 1983 the mobile home was destroyed by fire. During the fire Saltou suffered serious injuries. Champion retained C & G Claims of Rochester to adjust the claim, and Roger Baker handled the file. On November 14, 1983, Baker and Saltou discussed the personal property destroyed in the fire, Baker computed the cash value of the items to be $4078.89 for Saltou and $1440.91 for Hoppner. Baker recommended that Dependable, the company issuing the policy on the mobile home, issue a check jointly to Saltou, the lienholder, Merit Investment, and Merit's employee, Bowers. Dependable issued a $10,542.86 draft payable to Don Saltou, Lyle Bowers and Merit Investment, through Bjornson General Agency, Dependable's regional agent. This check was to pay for the damage to the mobile home.

Although the policy contained a living expenses clause, Baker told Saltou that there was no such coverage. Baker allegedly received this information from Thissen, but Thissen claimed that he informed Baker that the policy did provide additional living expenses coverage.

Despite numerous requests and inquiries by Baker concerning payment of his personal property claim, Bjornson did not issue a check until almost ten weeks after the fire. Bjornson denied Hoppner's claim for her lost personal property. The check was made payable to Merit Investment as well as to Saltou, although Merit Investment had already received compensation for the trailer. Bowers, acting in an individual capacity and not on behalf of Merit Investment, had sold Saltou some of the

mobile home's contents valued at approximately $400. Saltou claimed to have fully paid for these items in cash. Baker contacted Bjornson to complain about the way in which the check was made out, but received no satisfactory answer. He was instructed to have Saltou sign the check before Bowers did.

On January 18, 1984, Baker returned the check to Bjornson because Saltou had refused to sign a proof of loss statement. Saltou wrote a letter to the Commissioner of Insurance, complaining about the situation. After writing a responsive letter to the Commissioner defending the insurer's position, Bjornson resubmitted the check, which was due to expire within less than a month, to Saltou. Saltou refused to endorse the check, and Bowers refused to endorse it before Saltou did. The check expired in the office of Saltou's attorney.

Saltou's only income in 1983–1984 was $471 in VA benefits. Hoppner received SSI benefits, which were disbursed to her as needed.

Both appellants claimed to have suffered financial and emotional hardship as a result of this sequence of events. Saltou lost weight, was put on valium, and had to go to the Crisis Center in Rochester several times for emotional problems.

Saltou and Hoppner appeal the granting of respondents' motion for partial summary judgment.

### ISSUES

1. Did appellants' proof of the independent tort of intentional infliction of emotional distress support a claim for punitive and other extra-contractual damages?

2. Did the trial court err by finding that appellants did not prove punitive and other extra-contractual damages on their fraud claim?

### ANALYSIS

#### I

*Extra-contractual Damages for Intentional Infliction of Emotional Distress*

This is a summary judgment action. Under Minn.R.Civ.P. 56.03, summary judg-

ment may be granted where there is no genuine issue of material fact when construing the evidence in the manner most favorable to the non-moving party. *Nord v. Herreid*, 305 N.W.2d 337 (Minn.1981).

■ To prove their claim of the independent tort of intentional infliction of emotional distress, appellants must show: (1) extreme and outrageous conduct by defendant; (2) conduct that is intentional or reckless; (3) the conduct that caused emotional distress; and (4) severe emotional distress. *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 439 (Minn. 1983).

Appellants allege that respondents intentionally and maliciously delayed processing of appellant's insurance claims, issued a check for substantially less than the amount due to appellants, and made the check for loss of personal property payable jointly to appellants and the lienholder of their mobile home. The lienholder allegedly had no claim to the money, a fact of which appellants claim the respondents should have been aware. Appellants also claim that respondents intentionally and maliciously used economic coercion to attempt to force appellants to waive their contractual rights under the mobile home insurance policy, and that as a result of respondents' actions, appellants were damaged. Respondents assert that appellants' claims of malicious and intentional conduct are immaterial to appellants' claim for extra-contractual damages, thus respondents argue they are entitled to summary judgment as a matter of law.

■ The deciding issue here is whether respondents' actions constituted a tort or a breach of contract. Traditionally, mental anguish is a proper element of damages in some tort actions, but is "to be considered in actions for breach of contract in exceptional cases only." *Beaulieu v. Great Northern Railway Co.*, 103 Minn. 47, 51, 114 N.W. 353, 354 (1907). If the insurer's failure to timely pay the full amount to which the insured is entitled constitutes a

breach of contract, the insured is entitled only to contract damages, regardless of the bad-faith nature of breach, unless the breach is accompanied by an independent tort. *Wild v. Rarig*, 302 Minn. 419, 440, 234 N.W.2d 775, 789 (Minn.1975).

■ Willful breach of a contract may give rise to a separate tort for punitive damages purposes. *See Mykleby v. Chicago, St. Paul, Minneapolis & Omaha Railway Company*, 39 Minn. 54, 38 N.W. 763 (1888). In *Mykleby*, the plaintiff claimed that defendant railway's agents maliciously and forcibly kicked plaintiff from the steps of a railroad car while the train was moving very fast, causing plaintiff's leg to be crushed by a wheel. The supreme court held that plaintiff's damage claim was not a breach of defendant's contract to transport him safely to his destination. Instead, it was a tort action for assault and battery, and a claim for punitive damages. *Id.*

According to appellants, Dependable's failure to timely pay the full amount due and issuance of a draft payable jointly to appellant and the lienholder of the mobile home constitutes the independent tort of intentional infliction of emotional distress, and not merely a breach of contract.

■ The tortious acts appellants allege, however, are all connected with Dependable's failure to pay appellants' insurance claim in the manner appellants felt it should have been paid. The failure to pay an insurance claim in itself, no matter how malicious, does not constitute a tort; it constitutes a breach of an insurance contract. *Haagenson v. National Farmers Union Property & Casualty Company*, 277 N.W.2d 648, 652 (Minn.1979). "When the insurer refuses to pay or unreasonably delays payment of an undisputed amount, it breaches the contract and is liable for the loss that naturally and proximately flows from the breach." *Olson v. Rugloski*, 277 N.W.2d 385, 387–88 (Minn.1979). Punitive damages are not recoverable for breach of contract unless the breach was accompanied by an independent tort. *Id.* at 388.

■ Where an implied covenant of good faith has been maliciously broken, a malicious motive may be important in determin-

ing whether a material breach has occurred but is immaterial in determining damages for contract breach. *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775, (1975). "[E]xtra-contract damages are not recoverable for breach of contract except in exceptional cases where the breach is accompanied by an independent tort." *Haagenson*, 277 N.W.2d 648, 652 (Minn.1979).

In *Haagenson*, the plaintiff was injured when he came into contact with damaged power lines as he was attempting to enter an automobile. The Haagensons contended that their insurer's refusal to pay plaintiffs' no-fault claim was intentional, malicious, and in bad faith and, thus, constituted intentional infliction of emotional distress. The *Haagenson* court held that, even assuming the defendant insurance company had no reason to contest plaintiffs' claim, punitive damages were not recoverable for bad-faith breach of contract on a theory of intentional infliction of emotional distress. A malicious motive in breaching the contract, the court held, did not convert a contract action into a tort action. *Id.*

■ Similarly, appellants' allegations in support of their tort claim merely support a claim of bad-faith breach of contract and, in view of *Haagenson* and *Wild*, did not make out an independent tort of intentional infliction of emotional distress. Although bad faith failure to pay insurance claims is not to be encouraged, and respondents took advantage of appellants' vulnerable mental and economic condition, appellants must show more than malicious failure to pay an insurance claim in order to recover extra-contractual damages.

## II.

### *Extra-contractual Damages for Fraud*

■ Appellants also allege that respondents are not entitled to summary judgment on appellants' claim for extra-contractual damages based on fraud.

The requirements for the tort of fraudulent misrepresentation are:

(1) There must be a representation.

(2) It must be false.

(3) It must have to do with a past or present fact.

(4) The fact must be material.

(5) The fact must be susceptible of knowledge.

(6) The representer must know the fact to be false or must assert it as of his own knowledge without knowing whether it was true or false.

(7) The representer must intend to have induced the other person to act or the other person must have been justified in acting on the representation.

(8) That person must be so induced to act or so justified in acting on the representation.

(9) That person's action must be in reliance on the representation.

(10) That person must suffer damage.

(11) That damage must be attributable to the misrepresentation.

*Wise v. Red Owl Stores, Inc.*, 286 Minn. 199, 202, 175 N.W.2d 184, 187 (1970).

Appellants failed to allege all the necessary elements of fraud. They failed to allege that they relied to their detriment on respondents' representations. Appellants do not claim that the evidence necessary to show that they acted to their detriment in reliance on the respondents' fraudulent representations was unavailable to them. Possibly appellants did not specifically allege reliance to their detriment because they took no detrimental action in reliance on the representation that only Saltou was entitled to payment for his losses. For whatever reason, that essential element is lacking.

Appellants claim is based on the allegation that respondents "committed a fraud upon the [appellants] by issuing a check to * * * Saltou for substantially less than the amount due under the * * * policy * * * on the grounds that there was no coverage for a substantial portion of * * * personal effects in that they were owned or had been purchased by * * * Hoppner." As a direct result of the fraud and misrepresentations by defendants, the appellants allege present and future damages. These allega-

tions alone do not suffice to make out the elements of fraud.

Respondents allegedly knew that, based on Champion's representations, all of the appellants' personal effects which were destroyed in the fire were covered by the policy. They then issued a check to Saltou for less than the amount due under the policy on the grounds that there was no coverage for a substantial portion of personal effects because they were owned or had been purchased by Hoppner and Hoppner was not a named insured.

As the district court observed, however, appellants never endorsed and cashed the check made out by respondents. Saltou refused to endorse the check because Merit Investment was listed as a payee. There is no indication that appellants took any action in reliance on the representation that there was no coverage for personal effects owned or purchased by Hoppner. Appellants do not allege that Champion's representation that Hoppner did not have to be listed as a named insured was fraudulent. Nor do they allege that they had relied on that representation to their detriment by failing to list Hoppner as an insured.

Absent reliance and detriment, we hold that appellants did not make out a cause of action in fraud, and that the trial court did not abuse its discretion in granting respondents partial summary judgment on these issues.

### DECISION

The trial court did not err by concluding that appellants did not prove the independent tort of intentional infliction of emotional distress and thus were not entitled to extra-contractual damages.

The trial court properly denied appellants' claim for punitive damages on the basis of fraud. Appellants did not assert the elements necessary to establish a claim of fraud.

Affirmed.